# United States Court of Appeals
### *for the*
# Fourth Circuit

---

CITY OF MARTINSVILLE, VIRGINIA,

*Plaintiff-Appellee,*

– v. –

EXPRESS SCRIPTS, INC.; OPTUMRX, INC.,

*Defendants-Appellants,*

and

PURDUE PHARMA, L.P.; PURDUE PHARMA, INC.; THE  PURDUE FREDERICK COMPANY, INC.; RHODES PHARMACEUTICALS, L.P.; ENDO HEALTH SOLUTIONS, INC.; ENDO PHARMACEUTICALS, INC.; PAR PHARMACEUTICAL COMPANIES, INC.; PAR PHARMACEUTICAL, INC.; INSYS THERAPEUTICS, INC.; KVK-TECH, INC.; IMPAX LABORATORIES, LLC.; AMNEAL PHARMACEUTICALS, INC.; AMNEAL PHARMACEUTICALS OF NEW YORK, LLC; MYLAN PHARMACEUTICALS, INC.; HENRY SCHEIN, INC.; GENERAL INJECTABLES & VACCINES, INC.; INSOURCE, INC.; EXPRESS SCRIPTS HOLDING COMPANY; UNITEDHEALTH GROUP INCORPORATED; OPTUM, INC.; DOES 1-100,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA AT DANVILLE

## BRIEF OF DEFENDANTS-APPELLANTS

*(Counsel Listed on Inside Cover)*

Jonathan G. Cooper
Michael J. Lyle
Eric C. Lyttle
Christopher G. Michel
Matthew K. Wasserman
QUINN EMANUEL
    URQUHART & SULLIVAN, LLP
1300 I Street, NW
Washington, DC 20005
(202) 538-8000

Emily M. Scott
HIRSCHLER FLEISCHER, PC
2100 East Cary Street
Richmond, Virginia 23223
(804) 771-9539

*Counsel for Appellant Express Scripts, Inc.*

Brian D. Boone
ALSTON & BIRD LLP
1120 South Tryon Street
Charlotte, North Carolina 28203
(704) 444-1106

Turner A. Broughton
WILLIAMS MULLEN
200 South 10th Street
Richmond, Virginia 23219
(804) 420-6000

Matthew P. McGuire
ALSTON & BIRD, LLP
555 Fayetteville Street, Suite 600
Raleigh, North Carolina 27601
(919) 862-2279

*Counsel for Appellant OptumRx, Inc.*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 24-1912     Caption: City of Martinsville, Virginia v. Express Scripts, Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Express Scripts, Inc.
(name of party/amicus)

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☒ YES ☐ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

   Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant Express Scripts, Inc., states that its sole parent company is Evernorth Health, Inc. All interests in Evernorth Health, Inc., are held by The Cigna Group, a publicly traded company. The Cigna Group has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☑ YES ☐ NO
   If yes, identify all such owners:

   Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant Express Scripts, Inc., states that its sole parent company is Evernorth Health, Inc. All interests in Evernorth Health, Inc., are held by The Cigna Group, a publicly traded company. The Cigna Group has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?      ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: _____        Date: ___September 24, 2024___

Counsel for: Express Scripts, Inc.

- 2 -

[ Print to PDF for Filing ]

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. <u>24-01912</u>    Caption: <u>City of Martinsville v. Express Scripts, Inc.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>OptumRx, Inc.</u>
(name of party/amicus)

_____

 who is <u>appellant</u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?  ☑ YES ☐ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

    OptumRx is a wholly owned subsidiary of OptumRx Holdings, LLC. OptumRx Holdings, LLC is a wholly owned subsidiary of Optum, Inc. Optum, Inc. is a wholly owned subsidiary of United HealthCare Services, Inc. United HealthCare Services, Inc. is a wholly owned subsidiary of UnitedHealth Group Incorporated, which is publicly traded on the New York Stock Exchange.


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?            ☐YES ☑NO
        If yes, identify entity and nature of interest:


5.      Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:


6.      Does this case arise out of a bankruptcy proceeding?            ☐YES ☑NO
        If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.


7.      Is this a criminal case in which there was an organizational victim?            ☐YES ☑NO
        If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.


Signature:  /s/ Turner A. Broughton            Date:  09/25/2024

Counsel for:  OptumRx, Inc.


- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

                **Page**

PRELIMINARY STATEMENT ............................................................... 1

JURISDICTIONAL STATEMENT ........................................................ 4

ISSUES PRESENTED FOR REVIEW ................................................... 5

STATUTORY PROVISIONS INVOLVED ............................................ 5

STATEMENT OF THE CASE ................................................................ 6

    A.    Legal Background ..................................................................... 6

    B.    Factual Background................................................................... 9

    C.    Procedural History.................................................................. 10

        1.    Initial Proceedings....................................................... 10

        2.    The City's 2023 Discovery Requests And Stipulation ............. 11

        3.    The PBMs' 2024 Removal............................................ 11

        4.    The District Court's Remand Order.......................... 13

SUMMARY OF ARGUMENT ............................................................. 15

STANDARD OF REVIEW .................................................................. 18

ARGUMENT ...................................................................................... 18

I.    THE PBMs' REMOVAL WAS TIMELY ................................... 18

    A.    Section 1446(b)'s 30-Day Removal Clocks Are Triggered Only By Unequivocally Clear And Certain Grounds For Removal ........... 18

    B.    The 2018 Complaint Did Not Make The Grounds For Federal Officer Removal Unequivocally Clear and Certain ............................ 22

    C.    The District Court Erred In Concluding That The July 2023 Discovery Requests Triggered The Removal Clock........................... 24

    D.    The PBMs Timely Removed In January 2024 ................................. 31

II.    THE PBMs DID NOT WAIVE THE RIGHT TO REMOVE ...................... 32

    A.    Waiver Is Limited To Extreme Situations Where A Defendant Clearly and Unequivocally Intends To Remain In State Court ......... 33

    B.    The Record Does Not Support A Waiver Finding............................. 35

III.    THE PBMs' REMOVAL WAS SUBSTANTIVELY PROPER ................. 39

CONCLUSION .......................................................................................44

REQUEST FOR ORAL ARGUMENT ..................................................46

# TABLE OF AUTHORITIES

**Page**

## Cases

*Acad. of Country Music v. Cont'l Cas. Co.*,
    991 F.3d 1059 (9th Cir. 2021) ............................................................15

*Aqualon Co. v. Mac Equip., Inc.*,
    149 F.3d 262 (4th Cir. 1998) ....................................................34, 37

*Baker v. Atl. Richfield Co.*,
    962 F.3d 937 (7th Cir. 2020) .................................................................7

*Blumberger v. Tilley*,
    115 F.4th 1113 (9th Cir. 2024) .........................................................20

*Bosky v. Kroger Tex., LP*,
    288 F.3d 208 (5th Cir. 2002) .............................. 2, 8, 16, 20, 22, 23, 26

*BP p.l.c. v. Mayor of Balt.*,
    593 U.S. 230 (2021).......................................................................7, 19

*California v. CaremarkPCS Health LLC*,
    2024 WL 3770326 (9th Cir. Aug. 13, 2024) ...........................4, 17, 42

*Caver v. Cent. Ala. Elec. Coop.*,
    845 F.3d 1135 (11th Cir. 2017) ...........................................................7

*City of Va. Beach v. Murphy*,
    389 S.E.2d 462 (Va. 1990) .................................................................43

*Coinbase, Inc. v. Bielski*,
    599 U.S. 736 (2023).........................................................................15

*County Board of Arlington County v. Express Scripts, Inc.*,
    996 F.3d 243 (4th Cir. 2021) ................... 2, 3, 6–7, 14, 17, 22, 26, 39–41, 43, 44

*Cutrone v. Mortg. Elec. Registration Sys., Inc.*,
    749 F.3d 137 (2d Cir. 2014) ..........................................................9, 32

*Dietrich v. Boeing Co.*,
    14 F.4th 1089 (9th Cir. 2021) ........................................8, 20–21, 23

*Durham v. Lockheed Martin Corp.*,
445 F.3d 1247 (9th Cir. 2006) .............................................................6

*Payne ex rel. Est. of Calzada v. Brake*,
439 F.3d 198 (4th Cir. 2006) ...............................................................18

*Foster v. Mut. Fire, Marine & Inland Ins.*,
986 F.2d 48 (3d Cir. 1993) ...................................................................28

*Gov't of Puerto Rico v. Express Scripts, Inc.*,
-- F.4th --, 2024 WL 4524075 (1st Cir. Oct. 18, 2024) ...............4, 17, 41, 42, 43

*Grubb v. Donegal Mut. Ins.*,
935 F.2d 57 (4th Cir. 1991) .............................................3, 17, 33–36

*Harris v. Bankers Life & Cas. Co.*,
425 F.3d 689 (9th Cir. 2005) ...............................................................30

*Jefferson County v. Acker*,
527 U.S. 423 (1999).........................................................................7, 42

*Kuxhausen v. BMW Fin. Servs. NA LLC*,
707 F.3d 1136, 1141  (9th Cir. 2013) ..................................................24

*Latiolais v. Huntington Ingalls, Inc.*,
951 F.3d 286 (5th Cir. 2020) (en banc) ................................................7

*Lovern v. Gen. Motors Corp.*,
121 F.3d 160 (4th Cir. 1997) ................................. 2, 8, 15–16, 19–25, 27–29, 31

*McLaren v. UPS Store Inc.*,
32 F.4th 232 (3d Cir. 2022) ..................................................................29

*Minnesota v. Am. Petroleum Inst.*,
63 F.4th 703 (8th Cir. 2023) .................................................................43

*Mullinex v. Air & Liquid Sys. Corp.*,
2019 WL 774927 (E.D. Va. Feb. 20, 2019) .........................................20

*Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l*,
865 F.3d 181 (4th Cir. 2017) .......................... 8, 17, 18, 20, 21, 34–39

*Padgett Props., LLLP v. Nautilus Ins.*,
  645 F. Supp. 3d 538 (E.D.N.C. 2022) ............................................8, 20

*Par. of Plaquemines v. Chevron USA, Inc.*,
  7 F.4th 362 (5th Cir. 2021) ....................................................20, 26

*Paros Props. LLC v. Colo. Cas. Ins.*,
  835 F.3d 1264 (10th Cir. 2016) ..........................................................20

*Plaquemines Par. v. Chevron USA, Inc.*,
  84 F.4th 362 (5th Cir. 2023) ..............................................................15

*Romulus v. CVS Pharmacy, Inc.*,
  770 F.3d 67 (1st Cir. 2014)................................................................32

*Roth v. CHA Hollywood Med. Ctr.*,
  720 F.3d 1121 (9th Cir. 2013) ........................................................8–9

*Rothner v. City of Chi.*,
  879 F.2d 1402 (7th Cir. 1989) ............................................33, 34, 38

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
  592 U.S. 80 (2020)..............................................................................9

*Sawyer v. Foster Wheeler LLC*,
  860 F.3d 249 (4th Cir. 2017) ..............................................6–7, 41, 44

*Skidmore v. Norfolk S. Ry. Co.*,
  1 F.4th 206 (4th Cir. 2021) ....................................................2, 8, 19

*US Airways, Inc. v. PMA Cap. Ins.*,
  340 F. Supp. 2d 699 (E.D. Va. 2004) .....................2, 8, 16, 20, 23, 26

*Walker v. Trailer Transit, Inc.*,
  727 F.3d 819 (7th Cir. 2013) ........................................9, 21, 23, 29

*Wall v. Prudential Ins.*,
  1996 U.S. Dist. Lexis 21019 (N.D. Ala. Nov. 13, 1996) ............26, 27

*Watson v. Philip Morris Cos., Inc.*,
  551 U.S. 142 (2007)......................................................................6, 44

*Willingham v. Morgan*,
  395 U.S. 402 (1969)........................................................................6

*Zukor v. Inova Health Care Servs.*,
  2000 U.S. Dist. Lexis 21998 (E.D. Va. Feb. 23, 2000).......................6

## **Rules and Statutes**

Fed. R. Civ. P. 11 ...........................................................................21

Fed. R. Civ. P. 62(a)........................................................................15

28 U.S.C. § 1332(d) .........................................................................10

28 U.S.C. § 1442(a)(1)................................ 1, 4–5, 7, 18, 39, 41, 43–45

28 U.S.C. § 1446(b) ............. 2, 5–9, 13, 15–16, 19–20, 22–24, 26–29, 31–32, 35

28 U.S.C. § 1446(b)(1)................................ 7–8, 15, 19, 22, 24, 28, 31

28 U.S.C. § 1446(b)(3)....................... 5–6, 8, 13, 15–16, 19, 22–24, 26–28, 32, 35

28 U.S.C. § 1447(d) ...........................................................................4

28 U.S.C. § 1453(b) .........................................................................10

Removal Clarification Act of 2011, Pub. L. No. 112-51 § 2(b)(1)(A),
  125 Stat. 545 ................................................................................7

## PRELIMINARY STATEMENT

Express Scripts, Inc. and OptumRx, Inc. ("the PBMs") are pharmacy benefit managers that administer prescription-drug benefits for private and governmental clients, including federal agencies such as the Department of Defense ("DoD") and the Veterans Health Administration ("VHA"). In 2018, the City of Martinsville sued the PBMs and other defendants in Virginia state court for allegedly contributing to a public nuisance arising from prescription opioid abuse. For years, the City gave no indication that its claims may relate to the PBMs' work for federal agencies. The parties accordingly proceeded in state court.

In July 2023, the City served discovery requests that could be read to seek documents about the PBMs' work for federal agencies. The PBMs informed the City that they would remove the case to federal court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), unless the City confirmed that it was not relying on such work. The City then provided that assurance through a stipulation, and the case continued in state court.

In late 2023, counsel for the City revealed in a parallel suit brought on behalf of Jefferson County, Missouri, that Jefferson County intended to rely on the PBMs' work for federal agencies to support its nuisance claim in that matter—even though Jefferson County had entered into a stipulation with the PBMs purportedly disclaiming such reliance. Given the shifting positions, the PBMs asked the City to

confirm that it would not rely on the PBMs' work for federal officers. The City refused to do so. The PBMs then removed this case under the federal officer removal statute in January 2024, relying on this Court's decision upholding removal in a similar opioids-related public nuisance suit, *County Board of Arlington County v. Express Scripts, Inc.*, 996 F.3d 243 (4th Cir. 2021).

The district court remanded the case on the ground that the PBMs' removal was untimely, but that decision conflicts with this Court's precedent and would condone troubling litigation tactics. This Court has long held that the 30-day time limits in 28 U.S.C. § 1446(b) begin to run only when the basis for removal is "apparent within the four corners" of an initial complaint or subsequent paper received by the defendant. *Skidmore v. Norfolk S. Ry. Co.*, 1 F.4th 206, 210 (4th Cir. 2021) (quoting *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997)). That standard is satisfied only when the complaint or other paper makes it "unequivocally clear and certain" that the suit can be removed. *US Airways, Inc. v. PMA Cap. Ins.*, 340 F. Supp. 2d 699, 703–04 (E.D. Va. 2004) (quoting *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002)). The district court did not identify any paper received by the PBMs that meets that high bar. The court instead relied on its assessment of the PBMs' "subjective knowledge" of removability—an approach this Court has expressly rejected based on the statutory language and considerations of judicial economy and fairness. *Lovern*, 121 F.3d at 162.

The district court's related conclusion that the PBMs waived their right to remove is mistaken for many of the same reasons. The PBMs did not demonstrate the "'clear and unequivocal' intent to remain in state court" required to support the "'extreme'" finding of waiver. *Grubb v. Donegal Mut. Ins.*, 935 F.2d 57, 59 (4th Cir. 1991) (citation omitted). The PBMs did not remove the case in August 2023 only because the City assured them that it was not relying on their work for federal officers, and the PBMs removed promptly when the City refused to stand by that commitment. The district court's decision improperly rewards the City's attempt to have it both ways, litigating this case in state court while retaining the option to rely on the PBMs' work for federal officers—after avoiding removal to federal court by purportedly disclaiming that approach. Simply put, if the City had acknowledged in August 2023 that it intended to rely upon the PBMs' federal work as evidence to establish liability in this matter, the PBMs would have removed at that time and this dispute would not be before the Court. The dispute is here only because of the City's gamesmanship, which this Court should not condone.

Although the Court could stop by reversing on the timeliness issue, judicial economy strongly favors also addressing the substantive propriety of the PBMs' removal, which follows directly from this Court's decision in *Arlington County*. The City contends that it severed this suit's connection to the PBMs' work for federal officers when it purportedly agreed not to rely on that work. But other federal courts

3

of appeals have correctly rejected efforts to divide the PBMs' work in just that manner. *See Gov't of Puerto Rico v. Express Scripts, Inc.*, -- F. 4th --, 2024 WL 4524075 (1st Cir. Oct. 18, 2024); *California v. CaremarkPCS Health LLC*, 2024 WL 3770326 (9th Cir. Aug. 13, 2024). The City's attempted disclaimer here fails for the additional reason that its public nuisance claim is indivisible as a matter of Virginia law. The Court should accordingly hold that the PBMs' removal was both timely and proper, allowing the City's suit to proceed in federal court.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction under 28 U.S.C. § 1442(a)(1) because the PBMs, as "person[s] acting under" an "officer … of the United States," removed this suit "for or relating to … act[s] under color of such office" to "the district court … for the district and division embracing the place wherein it is pending." This Court has jurisdiction under 28 U.S.C. § 1447(d) because the PBMs appealed from an order "remanding [the] case to the State court from which it was removed pursuant to [28 U.S.C.] section 1442." The PBMs' notice of appeal was timely because it was filed on September 18, 2024, within 30 days of the district court's September 16, 2024 remand order. JA2476; JA2448; Fed. R. App. P. 4(a).

## ISSUES PRESENTED FOR REVIEW

1.    Whether the district court erred by holding that the PBMs' removal was untimely under 28 U.S.C. § 1446(b)(3), even though the PBMs did not receive any paper that clearly and unequivocally demonstrated a basis for removal.

2.    Whether the district court erred by holding that the PBMs waived their right to remove after the City stipulated that it was not relying on the PBMs' work under federal officers.

3.    Whether the PBMs' removal was substantively proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

## STATUTORY PROVISIONS INVOLVED

The federal officer removal statute, 28 U.S.C. § 1442(a)(1), states:

A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: … The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

The pertinent timing provision of the removal procedure statute, 28 U.S.C. § 1446(b)(3), further provides:

[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading,

motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

## **STATEMENT OF THE CASE**

### A.    Legal Background

**1.**    Initially enacted "near the end of the War of 1812," the federal officer removal statute has long served "to protect federal officers" and federal operations "from interference by hostile state courts." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147–48 (2007) (quoting *Willingham v. Morgan,* 395 U.S. 402, 405 (1969)); *see Arlington County*, 996 F.3d at 247 n.1. The statute extends not just to federal officers themselves but also to private parties "acting under" federal officers, including a private company "acting under a valid government contract." *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017) (citation omitted). That protection follows directly from the statute's basic purpose: "[i]f the federal government can't guarantee its agents access to a federal forum if they are sued or prosecuted, it may have difficulty finding anyone willing to act on its behalf." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006).

For most of the past 75 years, the federal officer removal statute provided a right for an entity acting under a federal officer to remove a suit brought in state court "for any act under color of such office." *Willingham*, 395 U.S. at 404 n.1 (citation omitted). That version of the statute required a removing defendant to "establish that the suit against it was '*for* a[n] act under color of office,'" which the

6

Supreme Court had "characterized as a 'causal connection between the charged conduct and the asserted official authority.'" *Sawyer*, 860 F.3d at 258 (quoting *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999)).

Congress amended the federal officer removal statute in the Removal Clarification Act of 2011, Pub. L. No. 112–51 § 2(b)(1)(A), 125 Stat. 545, 545. The statute now permits an entity acting under a federal officer to remove a suit brought "for *or relating to* any act under color of such office." 28 U.S.C. § 1442(a)(1) (emphasis added). As this Court has held, that new language "broadened the universe of acts that enable federal removal, such that there need be only a *connection or association* between the act in question and the federal office." *Sawyer*, 860 F.3d at 258 (cleaned up); *see Arlington County*, 996 F.3d at 256. Other federal courts of appeals have similarly recognized the broadening effect of the 2011 amendments. *See, e.g.*, *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (en banc); *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 944 (7th Cir. 2020); *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1144 (11th Cir. 2017).

**2.** The procedural requirements for removal under the federal officer removal statute, like those for removal under most other statutes, are specified in 28 U.S.C. § 1446. *BP p.l.c. v. Mayor of Balt.*, 593 U.S. 230, 238 (2021). Section 1446(b)(1), which applies to the removal of an "initial pleading," provides that a notice of removal "shall be filed within 30 days after the receipt by the

defendant … of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." Section 1446(b)(3) applies when "the initial pleading is not removable." It requires a notice of removal to be filed "within 30 days after the receipt by the defendant … of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

Under both provisions as construed by this Court, the 30-day removal clock begins running only when the basis for removal is "apparent within the four corners of the initial pleading" or other paper. *Skidmore*, 1 F.4th at 210 (quoting *Lovern*, 121 F.3d at 162). District courts within this Circuit and other federal courts of appeals interpreting Section 1446(b) have held that the paper received by the defendant must make the basis for removal "unequivocally clear and certain" in order to start the 30-day removal clock. *US Airways*, 340 F. Supp. 2d at 703–04 (quoting *Bosky*, 288 F.3d at 211); *see, e.g.*, *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1093–94 (9th Cir. 2021); *Padgett Props., LLLP v. Nautilus Ins.*, 645 F. Supp. 3d 538, 542 (E.D.N.C. 2022); *see also Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l*, 865 F.3d 181, 189 n.5 (4th Cir. 2017) (citing the "unequivocally clear and certain" standard).

The 30-day removal clocks in Section 1446(b) do not create "the only periods during which the defendant *may* remove"; they "merely [create] periods during which a defendant *must* remove *if* one of the thirty-day time limits is triggered." *Roth*

*v. CHA Hollywood Med. Ctr.*, 720 F.3d 1121, 1124–25 (9th Cir. 2013) (emphases added); *see also Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 146–47 (2d Cir. 2014). Thus, "[d]efendants are permitted to remove outside of these periods when the time limits of 28 U.S.C. § 1446(b) are not triggered." *Id.* at 147; *see Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013) ("The moment a case becomes removable and the moment the 30-day removal clock begins to run 'are not two sides of the same coin.'") (citation omitted).

### B.     Factual Background

The PBMs contract with health insurance plan sponsors to administer prescription-drug benefits and process insurance claims for prescription medications. JA16; *see also Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 83–84 (2020). The PBMs contract with both private entities (*e.g.*, employer-sponsored health plans) as well as government agencies.

As particularly relevant here, Express Scripts provides pharmacy benefit manager services to the DoD health care program known as TRICARE, which covers active-duty service members. JA19. Express Scripts serves TRICARE members across the country, including in and around the City, subject to specific requirements and direction from the DoD. JA19. Express Scripts also provides services to health plans participating in the Federal Employees Health Benefits Program ("FEHBP"), which is administered and overseen by the U.S. Office of

Personnel Management ("OPM"). JA19. Express Scripts serves federal employees across the country, including in and around the City, subject to specific requirements and direction from the OPM. JA19. OptumRx similarly contracts with the VHA to provide services to veterans across the country, including in and around the City, subject to specific requirements and direction from the VHA. JA19.

## C. Procedural History

The City filed this public nuisance suit in Virginia state court against 49 defendants in October 2018, alleging that various pharmaceutical industry participants—including manufacturers, distributors, retail pharmacies, and the PBMs—are responsible for creating the opioid crisis. JA47.

### 1. Initial Proceedings

In December 2018, a subset of the defendants removed this case to the U.S. District Court for the Western District of Virginia under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d) & 1453(b). The district court remanded the case in February 2019. JA539. Upon remand, the state court stayed the case pending the outcome of various related proceedings, eventually lifting the stay in June 2022. JA1578-1579. During the stay, the vast majority of defendants settled with the City. Those remaining are the PBMs and a handful of pharmaceutical distributors and manufacturers who are not parties to this appeal. JA17; JA2448.

### 2. The City's 2023 Discovery Requests And Stipulation

Following the lifting of the stay, the remaining parties proceeded to discovery, which provided the first opportunity for the City to provide information about how it planned to pursue its claim against the PBMs. In July 2023, the City served discovery requests broadly seeking information about the PBMs' formularies (lists of covered prescription drugs) and claims processed for their clients. JA1936-1938. The requests were framed in very general terms that could theoretically encompass the PBMs' work for both federal-agency and private clients. JA1936-1938.

Seeking clarification, the PBMs notified the City in an August 1, 2023 letter that they would remove the case on federal officer grounds unless the City agreed to "withdraw[] all challenges to federal prescription claims" and enter a stipulation—modeled on the stipulation in the parallel *Jefferson County* litigation involving the same counsel—committing not to "seek recovery from the PBM[s]" based on those claims. JA2349-2350. The City agreed "to stipulate that Plaintiff will not seek to establish liability against Federal Plans in this state court litigation." JA22. The parties subsequently agreed on a stipulation memorializing those commitments, which the state court entered. JA2143-2145.

### 3. The PBMs' 2024 Removal

In November 2023, the PBMs learned that counsel for the City had taken the position in the *Jefferson County* litigation that the stipulation in that case did not

preclude the plaintiff from relying on the PBMs' work for federal health plans as evidence to prove its case. JA24. On December 14, 2023, counsel for the City stated in the *Jefferson County* litigation that the "stipulation does not preclude [Jefferson] County from including analyses of federal claims as further *evidence* of the extraordinary data [the PBMs]" had relating to prescription opioids. JA24 (emphasis added). The email added that the data would be "relevant to [the PBMs'] overall knowledge as to the choices it was making with regard to formulary and [utilization management ("UM")] offerings" and that "those choices are relevant here." JA24.

Given the close connection between the counsel and claims in the two cases, the PBMs asked the City on December 21, 2023, to confirm whether the City "is taking the position as expressed in [the *Jefferson County*] correspondence … that [the City] may rely on analyses of federal claims as evidence in support of its claims, despite the Joint Stipulation." JA24; JA2451. The PBMs further stated that "[i]f we do not receive a response from you by January 5, 2024, we will take [the City]'s position in this case to be the same as that expressed in [the] December 14, 2023, correspondence in the *Jefferson County* litigation." JA24; JA2451.

The City responded by email on January 5, 2024, stating that it had "no intention to use federal claims data to establish the PBM[s'] *liability relating to federal plans*" and that any "concern regarding compliance" with the stipulation should be directed to the state court. JA2325-2327; JA2453-2454 (emphasis added).

Because this response did not disavow the position of the City's counsel in *Jefferson County* that it was using the PBMs' work for federal plans as "evidence" to prove the PBMs' *liability relating to non-federal plans*, the PBMs responded to the City's email seeking clarification. The PBMs stated that they understood the City to be taking the same position as its counsel outlined in Jefferson County's December 14 email—that even if the City will not use the PBMs' work for federal plans "to establish the PBM Defendants' liability relating to federal plans[,]" the City nonetheless intends to use the PBMs' work for federal plans "as further evidence" that is "relevant to [the PBMs'] overall knowledge as to the choices [they were] making with regard to formulary and UM offerings." JA24. The PBMs requested that the City inform them if that understanding was incorrect. The City responded that it "stand[s] by [its] reply of January 5, 2024," and thereby did not disagree with the PBMs' understanding of the City's position. JA2325-2327; JA2454. The PBMs removed this case to federal court on January 17, 2024. JA14.

### 4.    The District Court's Remand Order

The City moved to remand, and the district court granted the motion on timeliness and waiver grounds. JA2466; JA2469. As to timeliness, the court concluded that the City's July 2023 discovery requests started the 30-day clock to remove under 28 U.S.C. § 1446(b)(3) because, in the court's view, the PBMs "knew" at that point that "the case was removable." JA2463. Because the PBMs'

January 2024 removal came more than 30 days later, the court held that the removal was untimely. JA2466.[1]

The district court separately held that the PBMs "waived any right to removal" based on their conduct in state court. JA2466. The court acknowledged that the PBMs had "filed their demurrers before the City's discovery requests were served and before it became clear there were grounds for removal." JA2468. But the court concluded that the PBMs had "indicated an intent to stay in state court" by "entering into the stipulation [with the City], asking the state court to enter it … , and continuing to litigate in state court for about five months after August 1, 2023." JA2466-2468.

The district court declined to address the substantive propriety of the PBMs' removal. The court stated that "absent the stipulation order and any procedural defects like timeliness and waiver, this case almost certainly would be removable, based on the reasoning and outcome in *Arlington County*." JA2469 n.12. The court noted that the City argues "that the case is not removable because the [s]tipulation … ensures that the federal officer defense is not available," but the court did "not

---

[1] The district court noted that the *Jefferson County* district court also remanded on timeliness grounds. JA2465. The PBMs have appealed the *Jefferson County* remand order to the Eighth Circuit. *Jefferson County v. Express Scripts, Inc.*, No. 24-1550 (8th Cir.). Briefing on that appeal was completed in August 2024. An argument date has not yet been set.

consider whether the stipulation alone renders this case non-removable." JA2469. The court denied the City's request for attorneys' fees, noting that "there are close issues in this case" and that the PBMs "did not lack an objectively reasonable basis for seeking removal." JA2473-2474.[2]

## SUMMARY OF ARGUMENT

The PBMs timely and properly removed this suit. The Court should reverse the district court's contrary procedural holding, which improperly condones the City's gamesmanship. And in the interest of judicial economy, the Court should confirm that the PBMs' removal complies with the federal officer removal statute.

**I.** The PBMs' 2024 federal officer removal was timely under the plain language of the removal procedure statute and this Court's precedent. The City's initial pleading in 2018 did not "on its face" disclose a basis for federal officer removal and therefore did not trigger the 30-day clock in 28 U.S.C. § 1446(b)(1). *Lovern*, 121 F.3d at 162. Nor did any "other paper" received by the PBMs from the

---

[2] The court granted a 30-day stay under Federal Rule of Civil Procedure 62(a) but denied the PBMs' request for a stay pending appeal under *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023). JA2469-2473. The PBMs filed a timely notice of appeal, JA2476-2478, and moved for a stay pending appeal—along with an expedited appeal—in this Court. That motion is fully briefed and awaiting decision. On October 23, 2024, the district court executed the remand. ECF No. 58. This Court has jurisdiction to grant the requested stay and review the merits of the remand order even though the remand has been executed. *See, e.g.*, *Plaquemines Par. v. Chevron USA, Inc.*, 84 F.4th 362, 372 (5th Cir. 2023); *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1065 (9th Cir. 2021).

City before January 2024 trigger the 30-day clock in 28 U.S.C. § 1446(b)(3) because no such paper made a basis for federal officer removal "'unequivocally clear and certain.'" *US Airways*, 340 F. Supp. 2d at 703–04 (quoting *Bosky*, 288 F.3d at 211).

The district court concluded that the City's July 2023 discovery requests triggered the 30-day removal clock under Section 1446(b)(3). But the court did not identify anything in those discovery requests that made the basis for removal unequivocally clear and certain. The court instead relied almost entirely on the PBMs' response to the discovery requests, which the court suggested demonstrated subjective knowledge of removability. That reasoning is doubly flawed. This Court has squarely foreclosed reliance on a defendant's "subjective knowledge" in determining when Section 1446(b)'s removal clocks are triggered, looking instead "within the four corners" of the papers received by the defendant. *Lovern*, 121 F.3d at 162. And in any event, the PBMs' response to the City's discovery requests does not demonstrate that the PBMs knew the case was removable. The PBMs said that they would remove the case *unless* the City confirmed that it was not relying on the PBMs' work for federal officers, which the City purportedly *did*. The PBMs removed only after the City refused to stand by that commitment. Allowing the City to avoid removal based on that sequence of events would reward gamesmanship and create troubling incentives for litigants and courts.

**II.** For related reasons, the district court erred in holding that the PBMs waived their right to remove this case by entering into the stipulation with the City and removing the case only after the City refused to confirm that it would abide by the stipulation. The PBMs' conduct is not remotely comparable to the "extreme situations" in which courts have found waiver of an otherwise-valid right to remove. *Grubb*, 935 F.2d at 59 (citation omitted). Upholding waiver on this record would discourage parties from working together to resolve their differences and instead create incentives for wasteful and unnecessary removals—undercutting the values of "judicial economy, fairness, and comity" that support the waiver doctrine. *Northrop Grumman*, 865 F.3d at 186 (citation omitted).

**III.** The PBMs' January 2024 removal was substantively proper. The district court did not reach this issue, but judicial efficiency supports resolving it, especially because the answer flows naturally from *Arlington County*. The City argued below that the parties' stipulation severed the connection between its suit and the PBMs' work for federal officers. But multiple courts have rejected that argument regarding similar disclaimers. *See Puerto Rico*, 2024 WL 4524075, at *1; *California*, 2024 WL 3770326, at *1. The ineffectiveness of the disclaimer is especially clear here because the City's claims sound in public nuisance, which by its nature does not permit subdivision of the kind the City proposes. This Court should accordingly reverse the decision below and hold that the City's suit can proceed in federal court.

This Court reviews de novo "questions concerning removal to federal court." *Payne ex rel. Est. of Calzada v. Brake*, 439 F.3d 198, 203 (4th Cir. 2006). It reviews a factual finding of waiver for clear error. *Northrop Grumman*, 865 F.3d at 186.

## ARGUMENT

## I.   THE PBMs' REMOVAL WAS TIMELY

The federal officer removal statute entitles an entity acting under a federal officer to remove a suit for or relating to conduct under the federal officer. 28 U.S.C. § 1442(a)(1). That statute itself contains no timing limitations or requirements. The only relevant timing constraints come from the general removal procedure statute, 28 U.S.C. § 1446(b), which provides that removal must occur within 30 days if a defendant receives an initial complaint or subsequent paper that clearly and unequivocally provides a basis for removal. Here, the PBMs received no such paper before their removal in January 2024. Their removal was therefore timely. The district court's contrary conclusion rests on a misapplication of the removal procedure statute and this Court's precedent, and it would create troubling incentives for ambiguity and evasiveness in removal litigation.

### A.   Section 1446(b)'s 30-Day Removal Clocks Are Triggered Only By Unequivocally Clear And Certain Grounds For Removal

"To remove a case" under the federal officer removal statute—or another civil removal statute—"a defendant must comply with" the procedures specified in

28 U.S.C. § 1446. *BP*, 593 U.S. at 238; *see Lovern*, 121 F.3d at 161. As relevant here, Section 1446(b) includes two timing constraints. Under Section 1446(b)(1), a "notice of removal shall be filed within 30 days after the receipt by the defendant … of a copy of the initial pleading setting forth the claim for relief." 28 U.S.C. § 1446(b)(1). Section 1446(b)(3) applies when "the case stated by the initial pleading is not removable." *Id.* § 1446(b)(3). In that circumstance, removal must occur "within thirty days after receipt by the defendant … of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.*

Relying on "the statutory language and policy," this Court has explained that the 30-day removal clocks in Section 1446(b) begin to run only when the basis for removal is "apparent within the four corners of the initial pleading" or other paper. *Lovern*, 121 F.3d at 162; *see Skidmore*, 1 F.4th at 210. A basis for removal is "apparent" if it is "evident, plain, clear, obvious, palpable." *Apparent*, Oxford English Dictionary (2d ed. 1989). By contrast, a basis for removal is not apparent— and thus Section 1446(b)'s 30-day clock is not triggered—when the basis for removal is "indeterminate … obscured[,] or omitted." *Lovern*, 121 F.3d at 162.

Applying that standard, district courts within this circuit have explained that Section 1446(b)'s 30-day removal clocks are triggered only when the basis for removal in a complaint or subsequent paper is "unequivocally clear and certain."

*Padgett*, 645 F. Supp. 3d at 542 (citation omitted); *US Airways*, 340 F. Supp. 2d at 703; *Mullinex v. Air & Liquid Sys. Corp.*, 2019 WL 774927, at *1 (E.D. Va. Feb. 20, 2019). Most other circuits have adopted the same or materially similar formulations. *See, e.g.*, *Blumberger v. Tilley*, 115 F.4th 1113, 1122 (9th Cir. 2024); *Paros Props. LLC v. Colo. Cas. Ins.*, 835 F.3d 1264, 1270–71 (10th Cir. 2016) (collecting cases). Of particular note, the Fifth Circuit—which this Court in *Lovern* explained had a "consistent" approach to the issue, 121 F.3d at 162—has repeatedly applied the "unequivocally clear and certain" test. *Par. of Plaquemines v. Chevron USA, Inc.*, 7 F.4th 362, 368 (5th Cir. 2021) (quoting *Bosky*, 288 F.3d at 211). And this Court has appeared to credit the "unequivocally clear and certain" standard. *Northrop Grumman*, 865 F.3d at 189 n.5; *see Dietrich*, 14 F.4th at 1093 (reading *Northrop Grumman* as "seeming to accept" that formulation).[3]

Regardless of the precise formulation, the principle that the 30-day clocks in Section 1446(b) are triggered only by documents making certain the grounds for removal "promotes clarity and ease of administration for the courts, discourages evasive or ambiguous statements by plaintiffs in their pleadings and other litigation papers, and reduces guesswork and wasteful protective removals by defendants."

---

[3] The district court suggested that *Northrop Grumman* used the "unequivocally clear and certain" language only in connection with waiver, JA2460 n.9 (quoting *Northrop Grumman*, 865 F.3d at 186-87), but *Northrop Grumman* discusses that standard as part of the Section 1446(b) analysis. *See* 865 F.3d at 189 n.5.

*Walker*, 727 F.3d at 824. As this Court explained in *Lovern*, a contrary rule under which Section 1446(b)'s 30-day clocks are triggered anytime a court concludes that a case was actually removable at an earlier date (even if only by a close call) would require courts to conduct complicated "mini-trial[s] regarding who knew what and when." 121 F.3d at 162. Such a rule would also create an incentive for plaintiffs to obscure potential grounds for removal and for defendants to file protective removals anytime a document even arguably contains a basis for removal, lest a court later conclude that the "indeterminate" document contained enough of a hint to trigger the 30-day clock. *Id.* And a contrary rule could present defendants "with an intractable dilemma" given that Section 1446(a) requires a notice of removal to comply with Rule 11, meaning that defendants receiving indeterminate documents may have to choose between "risking Rule 11 sanctions for noticing removal without making an adequate inquiry or forgoing removal altogether." *Id.* at 163; *see also Northrop Grumman*, 865 F.3d at 187.

Importantly, a defendant who receives an "indeterminate" pleading or other document is not *prohibited* from removing. The rule established by decisions like *Lovern* is simply that defendants in that position are not *required* to remove within 30 days under Section 1446(b). 121 F.3d at 162. In short, "a defendant *may* remove before it *must* do so." *Dietrich*, 14 F.4th at 1094. That approach discourages "'gamesmanship in pleading,' preventing plaintiffs from strategically starting the

removal clock without the defendants' realization, while still allowing plaintiffs to start the clock and prevent strategic delays simply by making the basis for removal *unequivocally clear and certain*." *Id.* (citation omitted). The result is "a fairer environment for plaintiffs and defendants," along with greater "judicial economy" for both state and federal courts. *Bosky*, 288 F.3d at 211.

### B. The 2018 Complaint Did Not Make The Grounds For Federal Officer Removal Unequivocally Clear and Certain

The threshold requirement for a timely removal by the PBMs here is that "the case stated by the initial pleading is not removable," as that term is used in 28 U.S.C. § 1446(b)(3). The district court rightly declined to adopt the City's argument on this point. JA2460-2461.

The parties and the district court agreed that the PBMs likely could have removed the 2018 complaint, which was materially similar to the complaint successfully removed in *Arlington County*. *See id.* But whether the PBMs *could have* removed the 2018 complaint is not the operative question for purposes of the Section 1446(b) analysis. As just explained, the conclusion that a defendant *can* remove a complaint does not mean that the defendant *must* remove that complaint within 30 days under Section 1446(b)(1). *See* p. 22, *supra*. Indeed, the statute itself forecloses that reading by permitting removal based on a "paper from which it may first be ascertained that the case is one which *is* or has become removable." 28 U.S.C. § 1446(b)(3) (emphasis added). The statute thus "expressly encompasses

22

the case in which the actual facts supporting federal jurisdiction remain unaltered from the initial pleading, but their existence has been *manifested* only by later papers, revealing the grounds for removal for the first time." *Lovern*, 121 F.3d at 162.

Holding that the 30-day removal clock begins to run "the first moment it becomes *possible* for the defendant to remove the case" would "conflate[] the timeliness question with the factual inquiry into whether the case is substantively appropriate for removal." *Walker*, 727 F.3d at 824. "No court of appeals has adopted this rule." *Id.* To the contrary, courts of appeals have reversed district courts for mistakenly equating "facts *sufficient to allow* removal with facts *sufficient to require removal within thirty days*." *Dietrich*, 14 F.4th at 1094 (emphases added).

As detailed above, the proper inquiry for determining whether Section 1446(b)'s 30-day clocks have started to run is whether the complaint makes the basis for removal "unequivocally clear and certain." *US Airways*, 340 F. Supp 2d at 703–04 (quoting *Bosky*, 288 F.3d at 211); pp. 20–21, *supra*. The City's 2018 complaint does not meet that standard. The complaint does not mention the PBMs' work for federal clients or include any statement putting the PBMs on notice that the City's claims relate to that work. JA45-179. The City points to a single sentence in the complaint that states: "The PBM's plan design, including formulary placement, controlled which opioids were paid for, reimbursed, and covered by public and private pharmacy benefit plans." JA2459 (quoting JA168). As the district court

correctly explained, "nothing about the language of the foregoing … makes clear that any federal plans were included." JA2459.

The 2018 complaint is thus precisely the kind of "indeterminate" pleading that does not trigger the 30-day removal clock in Section 1446(b)(1). *Lovern*, 121 F.3d at 162. Even if the PBMs "*could have* ventured beyond the pleadings to demonstrate removability" of the initial pleading, they were not "*obligated* to do so" to comply with the timing provisions of Section 1446(b). *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1141 n.3 (9th Cir. 2013).

### C.    The District Court Erred In Concluding That The July 2023 Discovery Requests Triggered The Removal Clock

The district court held that the PBMs' removal was untimely on the ground that Section 1446(b)(3) required the PBMs to remove within 30 days of receiving the City's July 2023 discovery requests. JA2461-2466. That conclusion was flawed in multiple respects. Most fundamentally, the court did not identify anything "within the four corners" of the discovery requests that made the basis for removal "apparent," as this Court's precedent requires. *Lovern*, 121 F.3d at 162. The court instead drew an inference about the PBMs' "subjective knowledge" of the basis for removal based on the letter sent by the PBMs to the City in response to the discovery requests. But this Court's precedent forecloses any such reliance on subjective knowledge. *Id.* Moreover, the district court's inference about the PBMs' purported knowledge has no basis in the record, because the PBMs indicated that they would

24

remove *unless* the City confirmed that it was not relying on the PBMs' work for federal clients in seeking liability, which the City then purportedly *did*. The PBMs' letter is thus not a proper basis for the timeliness holding.[4]

1.     The district court's central error was straightforward: it never identified anything "within the four corners of" the July 2023 discovery requests—or any "'other paper'" received by the PBMs—that made the basis for federal officer removal "apparent." *Lovern*, 121 F.3d at 161–62 (quoting 28 U.S.C. § 1446(b)). The court's holdings that Section 1446(b)(3)'s 30-day removal clock was triggered and the PBMs' subsequent removal was untimely were therefore mistaken.

A review of the July 2023 discovery requests illustrates why the district court's decision is erroneous. The City's first request to the PBMs seeks "[a]ll Documents, information, and/or data sufficient to show Your Operative Formularies that governed all Express Scripts covered lives in the Martinsville Geographic Area for each year during the relevant time period." JA1936. The City's second request seeks "[d]ata for every claim You processed, rejected (including reason for rejection), and/or reversed … includ[ing] information sufficient to show any

---

[4] Compounding its error, the district court improperly excused the City's failure to raise the 2023 discovery requests as part of its timeliness argument before its reply brief in support of its remand motion. JA2461 n.10. Notwithstanding that the City forfeited that argument, the City's failure to even mention its discovery requests underscores that they did not clearly and unequivocally provide a basis for removal.

Utilization Management applied to any claim." JA1936. Other requests are similarly broad and general; none say anything about the PBMs' federal clients. JA1936-1938. While such sweeping requests *could* be read to cover the PBMs' work for federal officers and therefore may support *discretionary* removal, *cf. Arlington County*, 996 F.3d at 248, they do not provide anything close to "unequivocally clear and certain" notice that the City intended to rely on the PBMs' work for federal clients. *US Airways*, 340 F. Supp. 2d at 703–04 (quoting *Bosky*, 288 F.3d at 211). They therefore do not trigger the 30-day removal clock in Section 1446(b)(3). *Id.*

Even if the discovery requests had been more specific, they would likely still fall short of the required clarity to *require* removal within 30 days. "A discovery request merely inquires about facts or legal positions" and "does not state the actual existence of a fact or the legal position of the party making the request," so it will rarely provide sufficiently clear notice that a suit has "become" removable. *Wall v. Prudential Ins.*, 1996 U.S. Dist. Lexis 21019, at *3–5 (N.D. Ala. Nov. 13, 1996); *see, e.g.*, *Plaquemines*, 7 F.4th at 373 (holding that discovery requests that only alert a defendant to what "*might* be relevant" do not satisfy the "unequivocally clear and certain" standard for removal); *Zukor v. Inova Health Care Servs.*, 2000 U.S. Dist. Lexis 21998, at *16 (E.D. Va. Feb. 23, 2000) ("Although discovery responses may trigger removal, a discovery request usually will not."). In any event, this Court need not address the significance of discovery requests in the removal timing analysis as

a general matter. It suffices for this case to hold that nothing in the broadly framed July 2023 discovery requests provided the clear and unequivocal notice required to start the 30-day clock under Section 1446(b)(3). *See Lovern*, 121 F.3d at 162.

**2.**     Rather than identifying anything in the discovery requests received by the PBMs to find that Section 1446(b)(3)'s 30-day removal clock had been triggered, the district court focused its analysis of the timeliness issue almost entirely on the PBMs' August 2023 letter to the City in response to those requests. The court acknowledged that a document *sent* rather than *received* by the PBMs "could not start the 30-day removal clock." JA2462. But the court nevertheless concluded that the letter was dispositive of the timeliness issue because, in the court's view, the letter "essentially acknowledged that the discovery requests informed [the PBMs] of their entitlement to removal." JA2462. That reasoning directly contradicts this Court's instruction that a defendant's "subjective knowledge" is immaterial to the removal timeliness inquiry. *Lovern*, 121 F.3d at 162. The district court's reasoning also fails on its own terms: the letter says only that the PBMs would be entitled to remove *if* the City did not disclaim reliance on the PBMs' work for federal clients, which the City then *did*. There is accordingly no basis to conclude that the PBMs knew they had a basis to remove.

**a.**     As this Court made clear decades ago, the inquiry into whether Section 1446(b)'s removal clocks have been triggered turns on the "face of the initial

pleading" and information "within the four corners of" subsequent papers received by the defendant—not "the subjective knowledge of the defendant." *Lovern*, 121 F.3d at 162. That interpretation follows directly from the text of the statute, which refers to "the case *stated by the initial pleading*" and the "*receipt by the defendant*" of a paper from which removability can be ascertained. 28 U.S.C. § 1446(b)(3) (emphases added); *see* 28 U.S.C. § 1446(b)(1) (referring to the "*initial pleading setting forth the claim for relief*") (emphasis added); *Lovern*, 121 F.3d at 162. As the Third Circuit concisely summarized in a decision cited by this Court in *Lovern*: "the relevant test is not what the defendants purportedly knew, but what the[] documents said." *Foster v. Mut. Fire, Marine & Inland Ins.*, 986 F.2d 48, 54 (3d Cir. 1993); *see Lovern*, 121 F.3d at 162 (stating that this Court's approach "is consistent with that espoused by the Third" Circuit in *Foster*).

The district court acknowledged that "the language of *Lovern* instructs courts to look to the papers themselves," but nevertheless concluded that there should be an exception "where a defendant has expressly stated that they knew the case was removable." JA2462-2463. That position is legally unsupportable. As explained above, *Lovern* is a binding interpretation of Section 1446(b)'s "statutory language and policy," 121 F.3d at 162, and nothing in this Court's decision or in the statute suggests the exception the district court attempted to create. Indeed, the district court's reading is at odds not only with this Court's interpretation but also with the

decisions of many other circuits that have uniformly held that "the § 1446(b) clocks are triggered based only on what a defendant can ascertain from the four corners of the plaintiff's complaint or other paper the defendant receives"—"not by what the defendant subjectively knew or the documents in its possession." *McLaren v. UPS Store Inc.*, 32 F.4th 232, 241 & n.4 (3d Cir. 2022) (collecting cases).

There are many sound reasons for the prevailing rule. As this Court explained, an inquiry into "the subjective knowledge of the defendant … could degenerate into a mini-trial regarding who knew what and when." *Lovern*, 121 F.3d at 162. By contrast, "a bright-line rule"—without exceptions—"'promotes clarity and ease of administration for the courts.'" *McLaren*, 32 F.4th at 239 (quoting *Walker*, 727 F.3d at 824). Relatedly, exceptions of the kind the district court created could prompt defendants to remove cases unnecessarily "for fear of accidentally letting the thirty-day window to federal court close" based on a court's later subjective interpretation. *Id.* (citation omitted). Such exceptions also give plaintiffs an incentive to provide ambiguous or misleading information in hopes that they could later create doubt about a defendant's subjective knowledge. *Id.* And as this case illustrates, the district court's exception discourages parties from trying to resolve their differences collaboratively, lest one party use the other's statements against it to demonstrate purported subjective knowledge. In short, the objective inquiry followed by this Court and others "brings certainty and predictability to the [removal] process and

avoids gamesmanship." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 697 (9th Cir. 2005).

**b.**     In any event, the district court's conclusion that the PBMs "expressly stated that they knew the case was removable" based on their August 2023 letter is not supported by the record. JA2463. The PBMs' letter stated that they would remove the case to federal court "*unless* [the City] inform[ed] the PBM Defendants … that it is withdrawing all challenges to federal prescription claims" and that the City would "not seek recovery" based on those claims. JA2349-2350 (emphasis added). In response, the City agreed to do exactly that. It disclaimed that it was "seek[ing] to establish liability against Federal Plans in this state court litigation," entered a stipulation to that effect, and limited the reach of the discovery requests that the PBMs thought might implicate the federal plans. JA22.

Given that context, the district court's characterization of the August 2023 letter as an "admission" by the PBMs that the removal clock had been triggered finds no support in the record. JA2461; JA2468. Nor did the letter say that the PBMs "thought it unequivocally clear and certain—not speculative—that the defense was available based on the discovery responses." JA2465. The letter instead reflects the PBMs' position at the time that the basis for federal officer removal was *contingent* upon the City's failure to disclaim reliance on the PBMs' work for federal clients, which the City then *did*. There is no basis to infer from the text of the letter or the

overall sequence of events that the PBMs knew—much less knew unequivocally—that a basis for federal officer removal existed in August 2023. The district court's untimeliness holding is thus mistaken even under its subjective approach—and the complexity of and factual disputes involved in applying that approach only underscore that a subjective approach is misguided.[5]

### D. The PBMs Timely Removed In January 2024

Because neither the City's "initial pleading" nor any "other paper" made it unequivocally clear and certain that this suit was removable on federal officer grounds, 28 U.S.C. § 1446(b)(1) & (b)(3), the PBMs retained the right to remove the suit if a basis to do so became available. The PBMs permissibly exercised that right in January 2024 when the City refused to disavow the position taken by its counsel in the *Jefferson County* litigation that the City could use the PBMs' work for federal-officer clients as evidence of liability. JA2325-2327; JA2454. The PBMs' removal on those grounds was timely and—as elaborated below in Part III—substantively proper.

---

[5] The district court noted "*Lovern*'s warning that courts should not allow 'strategic delay interposed by a defendant in an effort to determine the state court's receptivity to his litigating position.'" JA2463 (quoting 121 F.3d at 162). But the court did not make any finding that the PBMs strategically delayed removing this case. Indeed, the district court did "not rely in any way on any alleged bad faith by the PBMs or their counsel in the timing of the removal." JA2450 n.1.

The district court briefly suggested that the January 2024 emails from the City could not have triggered the PBMs' right to remove because they did not "clearly" do so. JA2464 n.11. But the court again applied the wrong standard, erroneously conflating when a defendant *can* remove as a discretionary matter with when a defendant *must* remove within 30 days under Section 1446(b). *See, e.g.*, *Cutrone*, 749 F.3d at 147 (explaining that Section 1446(b) does not create "the exclusive authorizations for removal"); p. 22, *supra*. Even if the court were correct that the "four corners" of the January 2024 emails did not include an unequivocally clear and certain basis for removal, JA2464 n.11, that would mean only that the PBMs were not *required* to remove within 30 days. But that conclusion would have little significance here because the PBMs undisputedly *did* remove within 30 days of the January 2024 emails. This Court accordingly need not address whether the January 2024 emails provide the unequivocally clear and certain grounds for removal required to trigger Section 1446(b)'s 30-day clock. *See, e.g.*, *Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 80 n.12 (1st Cir. 2014) (declining to address the issue in similar circumstances).

## II.    THE PBMs DID NOT WAIVE THE RIGHT TO REMOVE

The district court alternatively held that the PBMs "waived any right to removal on federal officer grounds" by taking certain actions in state court before removing—specifically, "entering into the stipulation, asking the state court to enter

it … and continuing to litigate in state court for about five months after" sending the letter to the City on August 1, 2023. JA2466. That was clearly erroneous. Simply put, there is no basis to conclude that the PBMs demonstrated the required "'clear and unequivocal' intent to remain in state court" rather than exercising an available right to remove on federal officer grounds. *Grubb*, 935 F.2d at 59.

## A.    Waiver Is Limited To Extreme Situations Where A Defendant Clearly and Unequivocally Intends To Remain In State Court

As this Court has recognized—but the district court did not—the waiver doctrine in this context "developed out of the necessity to interpret the pre-1948 removal statutes," which did not include the 30-day clocks now in Section 1446(b). *Grubb*, 935 F.2d at 58 (quoting *Rothner v. City of Chicago*, 879 F.2d 1402, 1415 (7th Cir. 1989)). In particular, the "ambiguous and indefinite time requirements of the early removal statutes" allowed defendants to remove in a strategically troubling manner—in some cases, "'at any time before the trial.'" *Rothner*, 879 F.2d at 1413 (citation omitted). Given the unfairness and gamesmanship that could result, "[i]t is no wonder that a body of law developed defining the rules of waiver." *Id.* at 1414.

Congress "addressed the problems that created the need for the [waiver] doctrine" by revising the removal statutes in 1948 and 1949 to include the time limits now in Section 1446(b). *Rothner*, 879 F.2d at 1415; *see id.* at 1414 (noting that the removal clocks were initially 20 days and later revised to the current 30 days). This Court and others have recognized that those revisions were "deliberately intended to

eliminate" the existing waiver doctrine, *Rothner*, 879 F.2d at 1416, and "there [is] no further need for" it as a statutory matter, *Grubb*, 935 F.2d at 59; *see id.* at 60.

The only version of the waiver doctrine that persists in the removal context is a "judge-made rule[]" that acts as a "supplement [to] the statutory scheme," serving "values of judicial economy, fairness, convenience, and comity." *Rothner*, 879 F.2d at 1415–16. Given the primacy of Congress's authority over federal civil procedure, the judge-made waiver doctrine is appropriately cabined to "'extreme situations'" in which a defendant "demonstrat[es] a 'clear and unequivocal' intent to remain in state court" despite a statutory right to remove. *Grubb*, 935 F.2d at 59 (quoting *Rothner*, 879 F.2d at 1415); *see Northrop Grumman*, 865 F.3d at 186 ("[A] finding of waiver is appropriate only in 'extreme situations,' when judicial economy, fairness, and comity demand it.") (citation omitted). For example, waiver may be appropriate "where the parties have fully litigated the merits," *Rothner*, 879 F.2d at 1416, or where the defendant asserted counterclaims or cross-claims in state court before removal, *Aqualon Co. v. Mac Equip., Inc.*, 149 F.3d 262, 264 (4th Cir. 1998). This Court's waiver decision in *Northrop Grumman* is illustrative. There, the party invoking removal (Northrop Grumman) was a *plaintiff* who had filed suit in state court and sought to remove based on the defendant's counterclaims. *Northrop Grumman*, 865 F.3d at 184–85; *see id.* at 183 n.1 (declining to address whether a plaintiff can ever remove). The Court first determined that Northrop Grumman had

removed after the 30-day clock in Section 1446(b)(3) had expired, meaning the statute foreclosed removal. *Id.* at 186–88. The Court reached waiver as an alternative holding. *Id.* at 188. The Court upheld the district court's waiver finding because Northrop Grumman had waited to file its notice of removal until "it appeared the case soon would proceed to trial," after Northrop Grumman had engaged in "'substantial defensive action' in state court." *Id.* at 186–87 (citation omitted). Specifically, Northrop Grumman filed a demurrer to the counterclaims that purportedly supported removal, separately filed a motion for summary judgment, and "engaged in extensive discovery" in state court—including "serving and responding to multiple sets of interrogatories, requesting and producing documents, filing motions to compel … , and deposing numerous witnesses." *Id.* at 188. In those extraordinary and unusual circumstances, the Court concluded that "considerations of judicial economy, fairness, and comity strongly support a conclusion that Northrop Grumman repeatedly sought to use the state court proceedings to its advantage, and thereby waived its right to removal." *Id.*

## B.  The Record Does Not Support A Waiver Finding

This case does not remotely resemble the "'extreme situations,' when judicial economy, fairness, and comity demand" a finding of waiver. *Northrop Grumman*, 865 F.3d at 186 (quoting *Grubb*, 935 F.2d at 59). Tellingly, the district court never acknowledged that stringent standard, let alone found it satisfied. Nor did the court

find that the PBMs demonstrated a "'clear and unequivocal' intent to remain in state court" rather than exercising an available right to remove. *Id.* The court instead stated simply that PBMs "evinced an intent to remain in state court" based on their agreement to the August 2023 stipulation that the state court entered and their modest continued involvement in the state court before the City provided a basis to remove in January 2024. JA2468. Those actions fall far short of the demanding showing required to support a waiver finding under this Court's precedents.

First, neither entering into nor asking the state court to approve the stipulation suggests a waiver of the PBMs' removal rights. The stipulation does not address the PBMs' removal rights in any way, much less include a "clear and unequivocal" statement that the PBMs were relinquishing their right to remove regardless of what actions the City took in the future. *Northrop Grumman*, 865 F.3d at 186 (quoting *Grubb*, 935 F.2d at 59). Indeed, the letter from the PBMs raising the prospect of a stipulation expressly *reserved* the PBMs' "objections, rights, and remedies," and the City never suggested any contrary understanding. JA2350. The stipulation simply confirmed the City's position at the time that it had not put the PBMs' work for federal clients at issue in the case. The stipulation is thus nothing like the submissions seeking resolution on the merits—such as a motion for summary

judgment or filing of counterclaims—that this Court has indicated would support waiver. *See Northrop Grumman*, 865 F.3d at 188; *Aqualon*, 149 F.3d at 264.[6]

Nor did the PBMs waive their right to remove by "continuing to litigate in state court" for the few months between the entry of the stipulation in August 2023 and the City's provision of a basis to remove in January 2024. JA2466. The district court did not identify any "substantial defensive action" taken by the PBMs during that period. *Northrop Grumman*, 865 F.3d at 186 (citation omitted). In sharp contrast with cases like *Northrop Grumman*—where the waiving party "sought multiple, substantive rulings from the state court" and engaged in "extensive discovery" during the relevant time period, *id.* at 188—during the relevant time period here, the PBMs filed no dispositive motions, served and responded to no interrogatories or document requests, produced no documents, filed no motions to compel, and deposed no witnesses. *Cf. id.* (noting that all of those steps occurred in *Northrop Grumman*); JA2468 (district court acknowledging distinctions with *Northrop*

---

[6] As the district court recognized, the PBMs filed demurrers in November 2022 "before the City's discovery requests were served and before it became clear that there were grounds for removal." JA2468. The court thus correctly declined to rely on those demurrers in the waiver analysis. JA2468 The court briefly noted that the PBMs later filed a request for a *hearing* on the demurrer. JA2466. But that is by definition a procedural request, not one for a "substantive ruling[]." *Northrop Grumman*, 865 F.3d at 188.

*Grumman*). Indeed, the parties did not even have a court-ordered discovery schedule or protective order in place, and virtually nothing else happened in the state court.

By concluding that the PBMs "continu[ed] to litigate in state court for about five months after August 1, 2023," JA2466, the district court thus appeared to find little more than that the PBMs did not immediately remove after receiving the City's discovery requests in July 2023. But that reasoning just repackages the court's statutory untimeliness holding as a waiver finding. If the court's application of the statute is mistaken, *see* Part I, *supra*, the waiver holding must fall too. As explained above, the waiver doctrine exists only as a "judge-made ... supplement" to the statute to address "extreme situations" not covered by Congress. *Rothner*, 879 F.2d at 1415. A situation in which nothing of consequence happened during the brief period after the PBMs entered into the stipulation is hardly an extreme situation supporting a "clear and unequivocal" waiver. *Id.*

Finally, the underlying principles of the waiver doctrine—"considerations of judicial economy, fairness, and comity," *Northrop Grumman*, 865 F.3d at 188— weigh heavily against a waiver finding here. As explained above, requiring the PBMs to remove immediately after receiving the City's discovery requests in July 2023—even though the City was willing to reach a stipulation that appeared at the time to address the PBMs' concerns—would not promote "judicial economy" or "comity." *Id.* It would instead create an incentive for wasteful protective removals

that unnecessarily consume resources in federal courts and disrupt proceedings in state courts. *See* p. 21, *supra*. And "fairness" considerations further tip the balance against waiver. *Northrop Grumman*, 865 F.3d at 188. At bottom, the City is attempting to litigate this case in state court while relying on the PBMs' work for federal officers—after denying that it would do just that. Whatever else can be said of that conduct, it does not support the City on fairness grounds.

## III. THE PBMs' REMOVAL WAS SUBSTANTIVELY PROPER

In addition to being timely, the PBMs' removal was substantively proper because it complied with each element of 28 U.S.C. § 1442(a)(1). Each of the PBMs is a "person" within the meaning of the statute; the PBMs were "acting under" federal officers in helping administer federal healthcare programs for agencies like DoD and VHA; the City brought this suit "for or relating to" the PBMs' conduct under federal officers; and the PBMs have colorable federal defenses. *Id.* That conclusion follows directly from this Court's decision in *Arlington County*, which held that another Virginia locality's public nuisance suit against subcontractors of a pharmacy benefits manager satisfied the elements of the federal-officer removal statute. 996 F.3d at 248. Indeed, the City did not argue that "*Arlington County* is distinguishable in terms of substance," and the district court appeared to agree. JA2457; *see* JA2469.

The City instead argued that the stipulation in which it purportedly disclaimed pursuit of liability against the PBMs based on their work for federal entities eliminated the grounds for federal officer removal. JA2457; *see* JA2338-2340. The district court did not reach the issue, JA2469, but it can be readily resolved based on *Arlington County* and recent decisions from other courts of appeals on analogous facts. For at least three separate reasons outlined below, the PBMs' removal was permissible under the federal officer removal statute. As in *Arlington County*, "judicial economy favors resolution of" that purely legal question during this appeal "without a time-consuming and costly remand." 996 F.3d at 248; *see id.* ("[R]esolving [the propriety of removal] without a remand will allow [the City] to litigate the merits of its case as swiftly as possible without the possibility of another appeal based solely on jurisdictional grounds.").

*First*, the stipulation does not preclude removal because the City challenges conduct that the PBMs perform on an undifferentiated basis for federal and non-federal clients alike. The City's attempt to disclaim liability based on the PBMs' work for federal officers thus cannot sever the connection between the suit and that work. This Court rejected a materially indistinguishable argument from the local-government plaintiff in *Arlington County*, which contended that the PBMs' work for federal officers was unimplicated in the suit because the complaint "did not even mention" federal entities. 996 F.3d at 256. The Court noted that the plaintiff's

claim that it was seeking "monetary damages due to harm arising from 'every opioid prescription'" necessarily implicated the PBMs' federal work, and that any attempt to disaggregate federal and non-federal work "would elevate form over substance." *Id.* at 256–57. Central to the Court's reasoning was the language of Section 1442(a)(1), which in its amended form requires only that the suit "relat[e] to" an act under a federal officer—a "broader" understanding of federal officer removal jurisdiction than existed before the 2011 amendments. *Id.* at 256 (citing *Sawyer*, 860 F.3d at 258). As in *Arlington County*, the City's suit *relates to* the PBMs' work for federal clients notwithstanding the City's hollow disclaimer.

Two recent decisions from other courts of appeals in analogous cases further confirm the propriety of that result. In *Puerto Rico*, Express Scripts, Inc. (and another PBM, Caremark), removed a suit on federal officer grounds, arguing that their provision of pharmacy benefit manager services to federal agencies was indivisible from their work for private entities. 2024 WL 4524075, at *1. The district court remanded, finding that the plaintiff's disclaimer that it was not seeking to establish liability "relating to any federal program … or any contract related to a federal program" "purportedly limited the [plaintiff's] recovery to non-federal programs" and therefore made federal officer removal unavailable. *Id.* at *9. The First Circuit reversed. It held that "the disclaimer was not effective to prevent removal" because the PBMs alleged that their work "negotiat[ing] for rebates" and creating "rebate

41

agreements" occurred jointly for federal and non-federal plans, *id.* at *10, and, at the jurisdictional stage, the PBMs' theory of the case "must be 'credit[ed]' in evaluating removal," *id.* at *9 (quoting *Acker*, 527 U.S. at 432).

In *California*, the Ninth Circuit also found a disclaimer insufficient to "defeat removal." 2024 WL 3770326, at *1. The court explained that, contrary to the conclusion of the district court, the claims "remained causally connected" to the PBMs' federal work despite the disclaimer because the state's complaint challenged conduct that the PBMs performed for federal and non-federal clients alike. *Id.* (cleaned up). The Ninth Circuit remanded to the district court to consider the state's other arguments, but in a concurrence in the judgment, Judge Ikuta stated that "no disclaimer, however worded, can help California avoid a causal nexus between Caremark's conduct on behalf of the federal government and California's claims" and that "[t]he same analysis applies to Express Scripts" as well. *Id.* at *2 & n.1; *see Puerto Rico*, 2024 WL 4524075, at *10 (relying on Judge Ikuta's concurrence).

The same analysis applies here. The PBMs' rebate negotiations with prescription opioid manufacturers, which are central to the City's allegations, necessarily implicate Express Scripts' work for FEHBP plans and OptumRx's work for the VHA. JA133. As the First Circuit noted in *Puerto Rico*, the PBMs negotiate such rebates across their entire book of business for both federal and non-federal health plans alike. Such a connection falls plainly within the broader "relating to"

language that Congress added to Section 1442(a)(1) in 2011. *Arlington County*, 996 F.3d at 256. The stipulation thus cannot sever the connection between the City's claims and the PBMs' actions under federal officers.

*Second*, the nature of the City's claims reinforces the indivisible nature of the PBMs' conduct for federal and non-federal clients. The City's central claim in this suit is that the PBMs contributed to a public nuisance, JA155, which requires interference with "a public right or privilege *common to every person in the community*," *City of Va. Beach v. Murphy*, 389 S.E.2d 462, 463 (Va. 1990) (emphasis added) (cleaned up). The City's complaint accordingly seeks liability against the PBMs based on the allegation that they "flooded the market" with opioids and made "more pills available to the general public." JA132-133. But because a public nuisance claim by its nature concerns the public as a whole, as evidenced in the City's allegations, it is not susceptible to the artificial subdivision between federal and non-federal components that the City proposes. *See Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703, 716 n.11 (8th Cir. 2023) ("[A] nuisance claim creates a stronger case for federal jurisdiction.").

*Third*, the stipulation is ineffective because it would force the PBMs to prove federal direction in state court. Courts have explained that disclaimers that force defendants to prove the extent of federal direction in state court are unenforceable. As the First Circuit concluded in *Puerto Rico*, crediting such a disclaimer to deprive

the PBMs of federal court jurisdiction "would undercut § 1442(a)(1)'s requirement that federal courts determine whether a defendant acted under a federal officer's authority." 2024 WL 4524075, at *11. Permitting the PBMs "to remove this case serves the overarching policy" embedded in Section 1442(a)(1) "of giving government contractors a federal forum in which to present their federal [defenses] and thereby avoiding possible state court hostility to the defense[s] that could undermine federal interests." *Sawyer*, 860 F.3d at 259. Preventing them from doing so, by contrast, would undermine the critical federal policy interests that have long animated the federal officer removal statute. *See Watson*, 551 U.S. at 147–48; *Arlington County*, 996 F.3d at 247 n.1.

## CONCLUSION

The Court should reverse the decision below.

Dated: October 30, 2024

/s/ Jonathan G. Cooper

/s/ Turner A. Broughton

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Michael Lyle
Eric C. Lyttle
Jonathan G. Cooper
Christopher G. Michel
Matthew K. Wasserman
1300 I St. NW, Suite 900
Washington, DC 20005
Tel: (202) 538-8000
Fax: (202) 538-8100
mikelyle@quinnemanuel.com
ericlyttle@quinnemanuel.com
jonathancooper@quinnemanuel.com
christophermichel@quinnemanuel.com
matthewwasserman@quinnemanuel.com

**HIRSCHLER FLEISCHER**
Emily M. Scott
2100 E. Cary St.
Richmond, VA 23223
Tel: (804) 771-9500
Fax: (804) 644-0957
escott@hirschlerlaw.com

*Counsel for Express Scripts, Inc.*

**WILLIAMS MULLEN**
Turner A. Broughton
200 South 10th Street, Suite 1600
Richmond, VA 23219
Tel: (804) 420-6926
Fax: (804)644-0957
tbroughton@williamsmullen.com

**ALSTON & BIRD LLP**
Brian D. Boone
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
Tel.: (704) 444-1000
Fax: (704) 444-1111
brian.boone@alston.com

Matthew P. McGuire
555 Fayetteville Street
Suite 600
Raleigh, NC 27601
Tel.: (919) 862-2200
Fax: (919) 862-2260
matt.mcguire@alston.com

*Counsel for OptumRx, Inc.*

## REQUEST FOR ORAL ARGUMENT

This appeal presents important questions about the proper interpretation of 28 U.S.C. §§ 1442 and 1446 and the application of those statutes when plaintiffs purport to disclaim seeking liability for work under federal officers. The PBMs respectfully submit that oral argument may be of assistance to the Court and is appropriate given the significance of the legal issues.

# CERTIFICATE OF COMPLIANCE

1.    This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [10,933] words.

[ ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.    This brief complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

[ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>October 30, 2024</u>          <u>/s/ Jonathan G. Cooper</u>
                                                            *Counsel for Appellant*