**CASE NO. 24-1912**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

---

CITY OF MARTINSVILLE, VIRGINIA,

*Plaintiff-Appellee,*

*v.*

EXPRESS SCRIPTS, INC. and OPTUMRX, INC.,

*Defendants-Appellants.*

---

On Appeal from the United States District Court,
Western District of Virginia at Danville
Case No.: 4:24-cv-00002-EKD

---

**RESPONSE BRIEF OF PLAINTIFF-APPELLEE**

---

*Counsel listed on next page*

**THE CICALA LAW FIRM PLLC**
Joanne Cicala
R. Johan Conrod (VSB No. 46765)
Josh Wackerly
Shelbi Flood
101 College Street
Dripping Springs, TX 78620
Tel: (512) 275-6550
Fax: (512) 858-1801
joanne@cicalapllc.com
johan@cicalapllc.com
josh@cicalapllc.com
shelbi@cicalapllc.com

**KAUFMAN CANOLES, PC**
W. Edgar Spivey (VSB No. 29125)
Patrick H. O'Donnell (VSB No. 29637)
150 W. Main Street, Suite 2100
Norfolk, VA 23510-1665
Tel: (757) 624-3196
Fax: (888) 360-9092
wespivey@kaufcan.com
phodonnell@kaufcan.com

**SANFORD HEISLER SHARP LLP**
Grant Morris
Kevin Sharp
Jonathan Tepe
Brent Hannafan
Kasi Wautlet
611 Commerce Street, Suite 3100
Nashville, TN 37203
Tel: (615) 434-7000
Fax: (615) 434-7020
gmorris@sanfordheisler.com
ksharp@sanfordheisler.com
jtepe@sanfordheisler.com
bhannafan@sanfordheisler.com
kwautlet@sanfordheisler.com

Kaitlin Leary
James Hannaway
1700 Pennsylvania Ave.SE, Suite 300
Washington, DC 20003
Tel: (202) 499-5200
Fax: (202) 499-5199
kleary@sanfordheisler.com
jhannaway@sanfordheisler.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT ........................................................... 1

STATEMENT OF ISSUES ................................................................. 1

STATEMENT OF THE CASE ............................................................. 2

SUMMARY OF THE ARGUMENT ..................................................... 7

ARGUMENT .................................................................................. 12

    A.   The PBMs' Removal Was Not Timely. .................................. 12

    B.   The PBMs Waived the Right to Remove. ............................. 15

    C.   The Joint Stipulation and Order Nullifies Any Federal Officer Removal Basis. ................................................................. 17

    D.   The January 2024 Emails Were Not a Valid Ground for Removal. ....... 20

CONCLUSION ............................................................................... 21

CERTIFICATE OF COMPLIANCE .................................................. 23

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*California v. CaremarkPCS Health LLC*,
No. 23-55597, 2024 WL 3770326 (9th Cir. Aug. 13, 2024) ...............................20

*County Board of Arlington County, Va. v. Express Scripts Pharmacy, Inc.*,
996 F.3d 243 (4th Cir. 2021) ............................................. 1, 3, 8, 9, 12, 17, 18, 19

*Gov. of Puerto Rico v. Express Scripts, Inc.*,
119 F.4th 174 (1st Cir. 2024) ...............................................................20

*Green v. R.J. Reynolds Tobacco Co.*,
274 F.3d 263 (5th Cir. 2001) ...............................................................13

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
No. MDL No. 2:18-mn-2873, 2024 WL 1470056 (D.S.C. Feb. 29, 2024)..........17

*Lovern v. General Motors Corp.*,
121 F.3d 160 (4th Cir. 1997) ......................................................... 8, 9, 13, 14, 15

*Mai Dang v. Target Corp.*,
No. TDC-14-2215, 2014 WL 6705373 (D. Md. Nov. 26, 2014) ........................14

*Maryland v. 3M Co.*,
No. 23-cv-1836, 2024 WL 1152568 (D. Md. Feb. 12, 2024) ...................... 17, 18

*Nassau Cnty. v. Mylan Pharm., Inc.*,
No. 2:23-CV-5382, 2024 WL 3298500 (E.D.N.Y. July 4, 2024).......................17

*Northrop Grumman Tech. Servs. v. DynCorp Int'l LLC*,
865 F.3d 181 (4th Cir. 2017) ...............................................................15

*State of Ohio v. Ascent Health Services LLC*,
No. 23-cv-01450, 2024 WL 23187 (S.D. Ohio Jan. 2, 2024) ............................18

*Vermont v. 3M Co.*,
No. 2:24-cv-19, 2024 WL 1596887 (D. Vt. Apr. 12, 2024)................................17

*Westchester Cnty. v. Mylan Pharm., Inc.*,
   No. 23-CV-6096, 2024 WL 3043121 (S.D.N.Y. June 18, 2024)..........................17

**Statutes**

28 U.S.C. § 1442 ........................................................................................................2

28 U.S.C. § 1446 ...................................................................................................1, 12

Virginia Code Ann. § 8.01-271.1 .............................................................................15

## PRELIMINARY STATEMENT

The district court's thorough and thoughtful treatment of the issues cannot be improved upon. Judge Dillon considered the issues raised here by the Pharmacy Benefit Manager Appellants ("PBMs"), provided reasoned analysis, and faithfully applied this Court's precedent—both in letter and spirit.

## STATEMENT OF ISSUES

1.  Whether the district court correctly held that the PBMs' January 2024 removal was untimely under 28 U.S.C. § 1446(b)(3)'s thirty-day removal deadline where the original 2018 complaint was removable either at the time of filing or, alternatively, at the time of this Court's ruling in *County Board of Arlington County, Va. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243 (4th Cir. 2021), and where PBM counsel expressly stated in writing on August 1, 2023—over five (5) months prior to the actual removal—that certain City discovery requests gave the PBMs a then-existing "right to remove" under the federal officer removal statute;

2.  Whether the district court correctly held that the PBMs waived their right to remove when, instead of immediately removing in August 2023, they chose to jointly enter into a stipulation with the City—subsequently entered as an order by the state circuit court—barring the City from recovering for the

PBMs' federal plan activities and continued to litigate in state court for another five months;

3.  Whether the PBMs' removal was substantively proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), where in light of the state court stipulation barring federal plan recovery there is no federal plan nexus to the City's claims, nor is there any plausible federal defense; and

4.  Whether the January 2024 email chain relied upon by PBMs for removal was a proper basis for removal in the first instance.

## STATEMENT OF THE CASE

In 2018, the City of Martinsville filed this suit against a number of defendants, including the removing PBMs, for public nuisance and other claims arising out of the devastating impact the opioid epidemic has wreaked upon the City. The suit was immediately removed on Class Action Fairness Act grounds,[1] remanded by the district court in February 2019, and thereafter immediately stayed by the state circuit court.[2]

While this case was stayed in Virginia state court, a different Virginia opioid case with, among other entities, these same PBM Appellants as defendants, was

---

[1] Federal officer removal was not included as a ground in the 2018 original removal of this case.

[2] The express purpose of the stay was to permit sufficient time to determine whether additional state circuit court cases would move forward in Virginia, thus warranting formation of a statewide MDL.

removed to federal court on federal officer grounds and ultimately appealed to this Court. *See County Board of Arlington County,* 996 F.3d at 256–57. In the *County Board of Arlington* decision, which was issued on May 3, 2021, this Court held that federal officer removal was proper.

In reaching its decision, this Court addressed and rejected Arlington County's argument that its complaint never mentioned the federal contracts at issue. In rejecting this argument, this Court pointed to broad allegations in Arlington County's complaint regarding damage arising from "every opioid prescription," opioid distribution into the County via PBM "formularies," and the contention that the defendants "did nothing to stem the flow of excess opioids into Arlington County." *Id.* at 256–57. Per this Court, those allegations "necessarily includ[ed]" activities related to federal plans. *Id*. In other words, since the complaint alleged concerns regarding all opioid prescriptions and activities, and since at least some of those activities took place under the auspices of a federal plan, then the complaint "necessarily included" activities related to federal plans.

Notably, the allegations in the Arlington County complaint that this Court cited are mirrored in substantial part by the allegations in the City's complaint here. *Compare, e.g.,* 996 F.3d at 257 *with* JA56–54, JA145 (Martinsville Complaint, ¶¶ 18, 371: alleging that PBMs' fingerprints are on "nearly every opioid prescription filled"); JA162 (Martinsville Complaint, ¶ 462, 463: PBM Defendants "knowingly

and intentionally designed benefit plans that would maximize the number of opioids in the marketplace," and the PBMs "knowingly and intentionally created their formularies to ensure that an excessive number of pills were made available to users for use and abuse"); JA173 (Martinsville Complaint, ¶ 530: alleging defendants breached duties by "failing to take any action to prevent or reduce the unnecessary, non-medical or criminal use of opioids"). *See also* JA2460 (District Court Memorandum Opinion observing that, "the portions of the [Arlington County] complaint that the Fourth Circuit cited to as establishing the required causal connection are very similar to phrases and wording in the complaint here.")

In June 2022, *i.e.*, over one year after the *County Board of Arlington* decision, the Virginia circuit court lifted the stay in this case. When the stay was lifted, the PBM Appellants and the few other remaining defendants[3] filed responsive pleadings. The parties also conducted briefing on the various demurrers, motions to dismiss, and pleas in bar.

In July 2023, the City served discovery requests. On August 1, 2023, counsel for PBMs reacted to the requests by writing to counsel for the City. The letter (written on behalf of all PBM Appellants) demanded that the City confirm it was

---

[3] Between the time the case was stayed and June 2022 when the stay was lifted, a number of original defendants and defendant groups entered into global opioid liability settlements with all consenting local subdivisions in the United States. To date, Martinsville has elected to participate in all such global opioid settlements.

"withdrawing all challenges to federal prescription claims," demanded that the City

agree to enter a stipulation barring recovery for any such federal plan prescription

claims, and said this about the City's discovery requests:

> [The City's] Request for Production Nos. 1 and 2 encompass
> formularies and claims related to pharmacy benefit plans that are fully
> or partially funded by the federal government, administered by any
> federal agency, or delegated for administration by any federal agency.
> *Plaintiff's Requests show for the first time that Plaintiff will attempt to
> establish liability and seek recovery against the PBM Defendants based
> on federal prescription claims adjudicated or processed by the PBM
> Defendants*. Given that fact, the *PBM Defendants are entitled to remove
> this case to federal court.*

JA2349-2350 (emphasis added).

The August 1 letter closed by stating, again, that absent the City's agreement

to enter a stipulation withdrawing all challenges to federal prescription claims and

further agreement not to seek recovery for federal prescription claims, the PBMs

would "remove this case to federal court." JA2350.

The City and PBMs thereafter agreed to a joint stipulation, which was in fact

entered by the Virginia circuit court judge as an order on August 15, 2023. JA2142–

2150. The PBMs did not remove (at that time).

The Joint Stipulation and Order speaks for itself, but it effectively drew a hard

line between the City's claims and the PBMs' federal plan activities.

Specifically, the Joint Stipulation and Order barred the City not only from

seeking to establish liability against the PBM Defendants in connection with any

federal plans, but also from taking a position or pursuing "any argument suggesting that any of the prescription claims of the Federal Plans were improperly adjudicated or that the PBM Defendants' activities related to the Federal Plans caused, contributed to, exacerbated, or failed to sufficiently mitigate the opioid crisis. Plaintiff will also never seek to impose liability of any kind on the PBM Defendants relating to the Federal Plans in this state court litigation." JA2144. It also barred the City from pursuing "any remedy that would interfere with or otherwise impact the Federal Plans …." *Id*.

On December 21, 2023, nearly five months after the August 1, 2023 letter, the PBMs emailed counsel for the City and demanded certain assurances regarding the City's future approach to the litigation (notwithstanding the continued existence, unabated, of the Joint Stipulation and Order). JA2327. Counsel for the City responded by stating that the City was in compliance with the Joint Stipulation and Order and if there were any concern with such compliance the proper next step would be to seek enforcement of the Joint Stipulation and Order by the state court judge. JA2326. Counsel for PBMs responded by recharacterizing the City's response and demanding that counsel for the City immediately advise "[i]f that understanding is incorrect." *Id.* Counsel for City responded by stating that the City stood by the prior responses. JA2325.

This email chain was the basis for the PBMs' current removal, which occurred on January 17, 2024, approximately six months after service of the City's discovery requests and more than five months after both the August 1, 2023 letter and August 15 entry by the state court of the Joint Stipulation and Order. JA14.

In their Notice of Removal, the PBMs further confirmed that they were aware of federal officer grounds for removal in the Complaint itself. In Paragraph 90 of Subsection C of the Notice, which is titled "The City's Liability Theory is Related to the PBMs' Action for the Federal Government," the PBMs quote Paragraph 503 of the Complaint. The PBMs then state that, "[t]hese allegations include the thousands of prescription opioids dispensed to members of TRICARE, VHA, and FEHBP plans in and around the City of Martinsville." JA38 (Notice of Removal, ¶ 90). This statement by the PBMs, and the allegations of the City's complaint that triggered it, are of course directly reminiscent of this Court's ruling in *Arlington County.*

After removal, the City timely filed its Motion to Remand, which was then fully briefed by the parties. The district court held in person oral argument and subsequently granted the City's Motion.

## SUMMARY OF THE ARGUMENT

The district court properly concluded that removal was untimely and, in the alternative, that the PBMs waived their right to removal by choosing to enter into

the Joint Stipulation and Order in August 2023 rather than removing, as their August

1, 2023 letter expressly stated they would do.

The PBMs' arguments to the contrary can be summarized and rebutted as

follows:

1.    _PBMs_: *The July 2023 discovery requests were not "unequivocally clear*
*and certain" on their face such as to require removal, and the fact that PBM counsel*
*said they were, is merely "subjective knowledge" that does not impact the timeliness*
*analysis.*

a.    City: First, the original complaint was removable on its face as

described in this Court's *County Board of Arlington* decision, either at the time

of filing or in May 2021 when the *Arlington* decision was issued. Removal

was therefore untimely for this reason alone. Second, the PBMs' argument

regarding the July 2023 discovery requests hinges on *Lovern v. General*

*Motors Corp.*'s "four corners" rule, *i.e.*, the concept that the basis for removal

must appear within the four corners of the complaint or "other paper." 121

F.3d 160 (4th Cir. 1997). But *Lovern* is plainly distinguishable. That diversity

jurisdiction case involved a completely absent allegation of citizenship—and

this Court said it would not indulge in an inquiry as to the state of the

defendant's subjective knowledge (*i.e.*, knowledge acquired outside the

pleading) when the complaint itself did not reveal objective facts of

citizenship supporting removal. *Id.* at 162. But that "absent allegation" rule

does not apply here where this Court specifically held in *County Board of*

8

*Arlington* (a case where these same PBM Appellants were defendants) that broad allegations "necessarily include" federal plan activities, even where the federal plans are not expressly called out. 996 F.3d at 257. The July 2023 discovery requests fit within this holding, since as PBM counsel emphasized in the August 1, 2003 letter, the requests included within their scope federal plan information. Moreover, unlike *Lovern*, here the PBMs expressly recognized their right to remove in that same August 1 letter, a key distinguishing factor discussed in detail by the district court.[4]

2.     *PBMs: Even if the August 1, 2023 letter's statements are credited, those statements themselves conditioned the threat of removal on the City's refusal to enter a stipulation—since the City entered the Joint Stipulation and Order, there was no need for removal.*

         a.     <u>City</u>: This argument leads to the opposite conclusion. The PBMs' demand of a stipulation whereby the City both "withdrew" existing federal plan claims and promised not to pursue future federal plan claims (or seek

---

[4] The PBMs' contention that the district court "improperly excused" the City's alleged failure to raise its discovery requests as part of its timeliness argument is meritless. *See* Appellants' Brief n. 4. The City's timeliness position on remand at all times focused, in large part, on the service of its discovery requests and the PBMs' August 1, 2023 letter in response. *See* JA2336–2337 (City Motion to Remand quoting August 1, 2023 letter expressly referencing fact that City discovery requests create grounds for removal); JA2431 (City Reply Brief stating that its discovery requests were "indisputably an 'other paper'" under the removal rule). Moreover, as the district court explained, there is "clear evidence that the PBMs knew the case was removable at least as of August 1, 2023," and that "actual knowledge of the facts supporting the basis for removal … can trigger the 30-day removal clock." JA2463.

remedies for such claims) simply confirms that the basis for federal officer removal was unequivocally clear as of the receipt of the City's discovery requests, which the PBMs acknowledged and confirmed in their August 1, 2023 letter.

3.    _PBMs_: _There is no waiver, even though the parties entered the Joint Stipulation and Order and continued to litigate in state court for months thereafter._

    a.    <u>City:</u> There can be no more express embrace of state court than defendants who leverage a threat of removal to gain a stipulation whereby an opposing party expressly gives up claims, who join in having that stipulation entered as an order by the state court, and who then proceed to litigate under the protection of that Joint Stipulation and Order for five months. If these circumstances do not demonstrate a "clear and unequivocal" intent to remain in state court, it is difficult to imagine what circumstances would suffice.

4.    _PBMs:_ _Removal was substantively proper, because even though the Joint Stipulation and Order precluded recovery for federal plans, the prerequisites for federal officer removal remain._

    a.    <u>City:</u> The Joint Stipulation and Order remove the causal nexus connection between this case and the PBM Appellants' federal plan work, as well as the existence of any colorable federal defense. The PBMs' argument to the contrary relies heavily on two recent appellate court decisions from the First and Ninth Circuits that both addressed the impact of a plaintiff disclaiming any recovery for federal plans on federal officer removal by PBM

10

defendants. As the PBMs note in their brief (pp. 41–44), both cases involved concerns about the extent to which a PBM's activities for a federal plan occurred simultaneously with its activities for commercial plans. In both cases, however, the PBM with simultaneous activities was CVS Caremark—a PBM that is *not* a defendant here.[5] Thus, those decisions have no relevance to this case—not only is CVS Caremark not a defendant, but the PBMs who are defendants (and appellants) have provided no evidence that their work for federal and commercial plans occurs simultaneously such that discovery and liability for commercial plan activity will necessarily include federal plan activity.

5.     Finally, even if none of the above arguments apply, removal was nonetheless improper because the January 2024 emails were not a legitimate basis for removal. As the district court properly concluded, those emails contained no indication of any allegedly new federal officer removal basis and instead were merely an improper attempt by the PBMs to construct a timely basis for removal out of whole cloth. Indeed, the PBMs' contention that the content of the emails is irrelevant because they always had an open-ended right to remove is not only belied

---

[5] CVS Caremark was originally a defendant but was included in the global opioid settlement entered into by its affiliate CVS Pharmacy, a settlement that Martinsville joined. Thus, CVS Caremark had been dismissed from this case long before July 2023.

by their own actions (i.e., their attempt to construct a timely basis for removal via the emails), but also would lead to the untenable result of defendants having an unfettered, deadline-free ability to remove cases on federal officer grounds years after they knew of such a basis.

## **ARGUMENT**

### A.   **The PBMs' Removal Was Not Timely.**

There is no debate the PBMs were required to remove within thirty days of service of the complaint or, if the original complaint was not removable, within thirty days of when the PBMs received "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b).

Here, the original complaint was removable, for the same reasons that the complaint was removable in *County Board of Arlington*—namely, the allegations of the complaint were sufficiently broad to include the PBMs' activities on behalf of federal plans. Indeed, the PBMs expressly said as much in Paragraph 90 of their Notice of Removal. *See* JA38 (referring to Paragraph 503 of the City's complaint and stating "[t]hese allegations include the thousands of prescription opioids dispensed to members of TRICARE, VHA, and FEHBP plans in and around the City of Martinsville").

Even if not removable at the time of filing in 2018, at the very least the original complaint became removable as of May 2021 when this Court issued its *County Board of Arlington* decision, since the PBM Appellants were each parties in that case. *See Green v. R.J. Reynolds Tobacco Co.*, 274 F.3d 263, 267 (5th Cir. 2001) (observing that a "decision by a court in an unrelated case, but which involves the same defendant, a similar factual situation, and the question of removal … can constitute an 'order' under § 1446(b)," which starts the 30-day removal clock). *See also* JA2461 (District Court Memorandum Opinion expressing sympathy with this position but declining to reach these issues because the case could be decided on other grounds).

Of course, even if neither the original complaint nor the *County Board of Arlington* decision triggered a removal obligation, the City's July 2023 discovery requests did—as expressly stated in the PBMs' August 1, 2023 letter.

The PBMs respond by pointing to the decision in *Lovern* and claiming that the four corners of the City's discovery requests did not reveal a basis for federal officer removal. But the PBMs are wrong both on the substance of the discovery requests and on the application of *Lovern*.

First, in *Lovern* the original complaint did not include any allegations regarding plaintiff's citizenship, even though the actual underlying facts supported diversity jurisdiction. Defendants investigated the plaintiff's domicile and removed

13

within thirty days of receipt of interrogatory answers establishing the citizenship. This Court rejected the argument that the defendant's removal clock began to run in the absence of any citizenship allegations in the original pleading, in part because such a rule would require "a mini-trial" into the subjective knowledge of the defendant "regarding who knew what and when." 121 F.3d at 162.

Here, unlike in *Lovern*, the basis for removal *was* evident on the face of the discovery requests (just as it was evident on the face of the complaint), since those requests "necessarily included" federal plans.

Moreover, no "mini-trial" is required here, where shortly after service of the City's discovery requests the PBMs reacted by sending a letter definitively stating their existing right to removal.

On this latter point, the district court correctly observed that the PBMs are stretching *Lovern* too far. As Judge Dillon explained, the defendant in *Lovern* did not initially have knowledge of facts providing a basis for removal. However, "[w]here defendants [have] actual knowledge of the facts supporting the basis for removal, … that knowledge can trigger the 30-day removal deadline." JA2463 (*citing Mai Dang v. Target Corp.*, No. TDC-14-2215, 2014 WL 6705373, at *4 (D. Md. Nov. 26, 2014) (collecting cases)).[6]

---

[6] The district court also properly rejected PBM counsel's contention at oral argument that the statements in the August 1, 2023 letter were mere "puffery." As the district court noted, "that 'puffery' was subject to potential sanctions under Virginia Code

This conclusion is supported by *Lovern* itself, which makes clear that the lack of an express removal basis in a complaint "should not be allowed to cover strategic delay interposed by a defendant in an effort to determine the state court's receptivity to his litigating position." 121 F.3d at 163.

Finally, the PBMs' alternative rule—namely, letting the clock run indefinitely while they operate in a "may remove at any time, but are never required to do so" litigation posture—would incentivize the very procedural gamesmanship that the removal statues were designed to prevent in the first instance. *See Northrop Grumman Tech. Servs. v. DynCorp Int'l LLC*, 865 F.3d 181, 186–188 (4th Cir. 2017) (ordering remand where defendant attempted to strategically engage in "manipulation of the removal process").

## B.    <u>The PBMs Waived the Right to Remove.</u>

The PBMs also waived the right to remove by conditioning their removal threat on the City entering into a stipulation barring recovery for federal plan claims, and then subsequently executing the Joint Stipulation and Order. The state circuit court entered the Joint Stipulation and Order in mid-August—the PBMs thereafter did not remove until mid-January.

---

Ann. § 8.01-271.1 when it was placed in a proposed order the parties submitted to the court, which was subsequently entered." JA2463.

As even the PBMs concede, waiver in this context occurs when a party demonstrates a "clear and unequivocal" intent to remain in state court notwithstanding the right to remove. (Appellants' Brief at 34). Here, the PBMs asserted their right to remove, threatened the City with removal if it did not enter into the stipulation, executed the Joint Stipulation and Order (the consideration for which was giving up the right to remove), and then litigated for months in state court.

In fact, the Joint Stipulation and Order specifically says that it was entered into for the purpose of avoiding removal to federal court. JA2143. If stating in writing in a joint stipulation that the parties are entering the stipulation in lieu of the defendants removing the case to federal court—and then having that joint stipulation entered into the record as an order by the presiding state court judge—does not constitute waiver under a "clear and unequivocal" standard, one can hardly imagine what might qualify.

> Again, the district court's opinion states it most clearly:
>
> "Essentially, the PBMs decided that, to their satisfaction, the Stipulation Order would ensure the case would not veer into territory that could lead to removal. By asking the court to enter that stipulation as an order and by continuing to litigate, they evinced an intent to remain in state court. That they now regret that decision does not make the case once again removable."

JA2468–2469. And the district court correctly noted that, if the PBMs believed the City violated the stipulation, "their remedy is to challenge that conduct in state court

16

and to argue before the state court that the Stipulation Order would be violated by allowing use of the data related to federal plans." *Id.*

In sum, the PBMs clearly and unequivocally waived their right to remove.

## C.  **The Joint Stipulation and Order Nullifies Any Federal Officer Removal Basis.**

Of course, there is a fundamental substantive defect in PBMs' removal, too, namely the fact that the Joint Stipulation and Order removes any required causal nexus and nullifies any otherwise colorable federal defense.

To establish federal officer removal, the PBMs must show that they 1) acted under the direction of a federal officer; 2) possess a colorable federal defense; and 3) engaged in government-directed conduct that was causally related to plaintiff's claims. *County Board of Arlington*, 996 F.3d at 247.

But multiple courts have concluded that disclaimers by plaintiffs of recovery for federal activities nullify federal officer removal. *See Nassau Cnty. v. Mylan Pharm., Inc.*, No. 2:23-CV-5382, 2024 WL 3298500 (E.D.N.Y. July 4, 2024); *Westchester Cnty. v. Mylan Pharm., Inc.*, No. 23-CV-6096, 2024 WL 3043121 (S.D.N.Y. June 18, 2024); *Vermont v. 3M Co.*, No. 2:24-cv-19, 2024 WL 1596887 (D. Vt. Apr. 12, 2024); *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. MDL No. 2:18-mn-2873, 2024 WL 1470056 (D.S.C. Feb. 29, 2024); *Maryland v. 3M Co.*, No. 23-cv-1836, 2024 WL 1152568 (D. Md. Feb. 12, 2024) ("Because the State has expressly disclaimed any AFFF-related claims, 3M cannot establish the

requisite nexus between charged conduct and asserted official authority"); *State of Ohio v. Ascent Health Services LLC*, No. 23-cv-01450, 2024 WL 23187 (S.D. Ohio Jan. 2, 2024).

In addition to nullifying any connection or association between the City's claims and federal plans, the Joint Stipulation and Order also nullifies the existence of a "colorable federal defense." *See, e.g., Maryland v. 3M Co.,* 2024 WL 1152568, at *3 ("3M therefore fails to demonstrate the requisite nexus *or colorable federal defense* to sustain removal to federal court under the federal officer removal statute.") While preemption and the government contractor defense are popular candidates for removing defendants, neither defense applies when a plaintiff has given up making claims for federal plan activities or seeking any remedies for such activities. This is because the "Supreme Court has emphasized that such a defense must 'arise out of a defendant's official duties.'" *County Board of Arlington*, 996 F.3d at 254 (cleaned up).

The PBMs address these issues by citing to *County Board of Arlington* and by directing this Court's attention to two recent federal appellate decisions out of the First and Ninth Circuits, both of which allegedly support the PBMs' contention that their federal and commercial plan activities cannot be disentangled.

Initially, there was no disclaimer or federal plan stipulation in *County Board of Arlington*; therefore, this Court never addressed the issue in that case, and it provides no helpful guidance on this specific point.

Next, the PBMs' entanglement argument is flawed for several reasons. To begin with, the PBMs' argument serves as further proof that the complaint itself provides a basis for federal officer removal on its face. Specifically, the PBMs point out that the City's complaint seeks liability against the PBMs "based on the allegation that they 'flooded the market' with opioids and made 'more pills available to the general public.'" (Appellants' Brief at 43). And per the PBMs, "because a public nuisance claim by its nature concerns the public as a whole, as evidenced in the City's allegations, it is not susceptible to the artificial subdivision between federal and non-federal components that the City proposes." *Id.* In other words, the complaint has included federal and non-federal plan allegations all along, which always would have given rise to a right to remove under the *County Board of Arlington* rubric.

Moreover, the PBMs' *opioid* entanglement argument has not been adopted by any court. Instead, the two federal appellate opinions the PBMs cite from the First and Ninth Circuits involve insulin pricing cases. And not just insulin cases, but cases that focus on factual entanglement arguments and evidence provided by a PBM—CVS Caremark—that is not a defendant here. *See Gov. of Puerto Rico v. Express*

19

*Scripts, Inc.*, 119 F.4ᵗʰ 174, 194 (1st Cir. 2024) ("In sum, we credit Caremark's theory of the case that its federal and non-federal work is indivisible based on the way it negotiates rebates for the federal government and private clients simultaneously …."); *California v. CaremarkPCS Health LLC*, No. 23-55597, 2024 WL 3770326, at *2 (9th Cir. Aug. 13, 2024) (Ikuta, J., concurring in the judgment) ("Caremark contends that it engages in a single rebate negotiation on behalf of both private clients and the federal government.")[7]

Finally, the PBMs' entanglement argument is undercut by their execution of the Joint Stipulation and Order in the first place. If it really were impossible to disentangle federal and commercial activities, then no stipulation would have resolved the PBMs' concerns—only removal to federal court would have sufficed. The fact that instead of removing the PBMs entered into the stipulation confirms that, contrary to their current position on removal, they believe there can be a "subdivision between federal and non-federal components" of their work.

### D.   The January 2024 Emails Were Not a Valid Ground for Removal.

Finally, the January 2024 emails were not a valid ground for removal. As the district court's opinion correctly notes, "the first email from the City states it intends

---

[7] The majority opinion in the *California* decision actually relied on the incomplete nature of the plaintiff's (unilateral) disclaimer in that case—the concurrence discussed the CVS Caremark simultaneous entanglement issue. But that distinction does not help the PBMs either, because unlike in *California* the Joint Stipulation and Order here is not only bilateral, it is sufficiently comprehensive.

to abide by the Stipulation Order; the second simply refers back to the first. Neither of them clearly triggers a right to remove." JA2464.

The court then goes on to observe that it agrees with the City that a "defendant cannot simply manufacture a basis for removal by emailing self-serving questions and declaring that a failure to respond will be taken as assent." *Id.* (quotation marks omitted).

For this additional reason, the Court should affirm the district court's order.

## **CONCLUSION**

This Court should affirm the district court's order granting the City's Motion to Remand.

Dated: December 2, 2024                    Respectfully Submitted,

                                           */s/ R. Johan Conrod*
                                           THE CICALA LAW FIRM PLLC
                                           Joanne Cicala
                                           R. Johan Conrod (VSB No. 46765)
                                           Josh Wackerly
                                           Shelbi Flood
                                           101 College Street
                                           Dripping Springs, TX 78620
                                           Tel: (512) 275-6550
                                           Fax: (512) 858-1801
                                           joanne@cicalapllc.com
                                           johan@cicalapllc.com
                                           josh@cicalapllc.com
                                           shelbi@cicalapllc.com

SANFORD HEISLER SHARP LLP
Grant Morris
Kevin Sharp
Jonathan Tepe
Brent Hannafan
Kasi Wautlet
611 Commerce Street, Suite 3100
Nashville, TN 37203-
Tel: (615) 434-7000
Fax: (615) 434-7020
gmorris@sanfordheisler.com
ksharp@sanfordheisler.com
jtepe@sanfordheisler.com
bhannafan@sanfordheisler.com
kwautlet@sanfordheisler.com

Kaitlin Leary (pro hac vice)
James Hannaway (pro hac vice)
1700 Pennsylvania Ave. SE, Suite 300
Washington, DC 20003
Tel: (202) 499-5200
Fax: (202) 499-5199
kleary@sanfordheisler.com
jhannaway@sanfordheisler.com

KAUFMAN CANOLES, PC
W. Edgar Spivey (VSB No. 29125)
Patrick H. O'Donnell (VSB No. 29637)
150 W. Main Street, Suite 2100
Norfolk, VA 23510-1665
Tel: (757) 624-3196
Fax: (888) 360-9092
wespivey@kaufcan.com
phodonnell@kaufcan.com

*Attorneys for Plaintiff-Appellee*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, table of contents, table of authorities, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [4,913] words.

[ ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.    This brief complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

[ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: December 2, 2024           Respectfully Submitted,

                                                */s/ R. Johan Conrod*
                                              R. Johan Conrod