**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-1912

CITY OF MARTINSVILLE, VIRGINIA,

        Plaintiff – Appellee,

    v.

EXPRESS SCRIPTS, INC.; OPTUMRX, INC.,

        Defendants – Appellants.

Appeal from the United States District Court for the Western District of Virginia, at Danville. Elizabeth K. Dillon, District Judge. (4:24-cv-00002-EKD)

Argued: December 5, 2024          Decided: February 10, 2025

Before WYNN, RICHARDSON, and HEYTENS, Circuit Judges

Motion for a stay granted by published order. Judge Richardson wrote the order, in which Judge Heytens joined. Judge Wynn wrote a dissenting opinion.

**ARGUED:** Christopher George Michel, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Washington, D.C., for Appellants. Richard Johan Conrod, Jr., CICALA LAW FIRM PLLC, Dripping Springs, Texas, for Appellee. **ON BRIEF:** Jonathan G. Cooper, Michael J. Lyle, Eric C. Lyttle, Matthew K. Wasserman, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Washington, D.C.; Emily M. Scott, HIRSCHLER FLEISCHER, PC, Richmond, Virginia, for Appellant Express Scripts, Inc. Brian D. Boone, Charlotte, North Carolina, Matthew P. McGuire, ALSTON & BIRD, LLP,

Raleigh, North Carolina; Turner A. Broughton, WILLIAMS MULLEN, Richmond, Virginia, for Appellant OptumRx, Inc.

## ORDER

RICHARDSON, Circuit Judge:

People often say that you shouldn't have too many cooks in the kitchen. Wise words, particularly around Christmas. But culinary clutter can't compare to the havoc of multiple courts taking actions in the same case, on the same issues, at the same time. That's what happened here. Fortunately, there is a rule against it.

The City of Martinsville, Virginia, sued Express Scripts and OptumRx in state court. But the defendants preferred to plead their case in *federal* court. So they removed the case to the Western District of Virginia. That didn't go the way the defendants hoped: The district court sided with the city and ordered that the case be sent back to state court. Yet that didn't end the matter, for a state court may not proceed after a remand until the remand order is physically mailed to it. 28 U.S.C. § 1447(c). And after the district court issued the remand order—but before the district court got to the post office—Express Scripts and OptumRx noted an immediate appeal challenging the order, as permitted by statute. § 1447(d).

Under Supreme Court precedent, that notice of appeal suspended the district court's power to act, requiring that the district court halt all proceedings related to the appeal. *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 741 (2023); *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). But the district court mailed the remand order anyway. In

doing so, it tried to cook when the kitchen was ours. Therefore, we recognize—as we must—that the district court lacked the authority to mail the remand order because it was automatically stayed under *Coinbase* from doing so.

**I.     Background**

In 2018, Martinsville, Virginia, sued several defendants, including Express Scripts and OptumRx. In Martinsville's telling, the defendants committed public nuisance and hurt the city through their role in the opioid epidemic. The named defendants removed the case to federal court under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453(b). The district court then remanded it to Virginia, where the case remained until 2024. At that point, defendants again removed to federal court—this time under the federal-officer-removal statute, 28 U.S.C. § 1442. Martinsville opposed this removal and moved to remand a second time. The district court granted the motion and issued a remand order.

But that alone didn't give the state court a green light. Before the state court could proceed, the clerk for the district court had to first mail it a copy of the order. § 1447(c) ("A certified copy of the order of remand shall be mailed … [t]he State court may thereupon proceed with such case."). And Express Scripts beat the clerk to the punch, docketing an appeal of the remand order before the order was mailed. It then asked the district court to stay the order pending appeal, citing *Coinbase*. The district court refused. It read *Coinbase* narrowly to reach only its factual context of orders compelling arbitration.

Thwarted below, Express Scripts and OptumRx moved this court for the same stay, again citing *Coinbase*. *See* Fed. R. App. P. 8(a)(2). We agree with them. The district

3

court's logic artificially restricts *Coinbase*. Under a fairer reading of *Coinbase*, the district court was automatically stayed from mailing the remand order.

## II. Discussion

Certain federal officers, and those acting under a federal officer, have a statutory right, when sued or prosecuted in state court for official acts, to remove those actions to federal district court. § 1442(a), -(1).[1] If they do, but subsequently the district court finds removal improper and orders remand, federal law authorizes an immediate appeal of that decision. § 1447(d) ("[A]n order remanding a case to" state court "pursuant to § 1442" "shall be reviewable by appeal.").

Like all appeals, this implicates what the Supreme Court has called the "*Griggs* principle," which kicks in upon the "filing of a notice of appeal." *Griggs*, 459 U.S. at 58. The appeal then "divests the district court of its control over those aspects of the case involved in the appeal." *Coinbase*, 599 U.S. at 740–41. Without control, the district court

---

[1] In relevant part, the statute provides:

(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
 (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

§ 1442. The statute seeks to insulate federal officers from potential hostility in state court by providing them a federal forum. *See Willingham v. Morgan*, 395 U.S. 402, 405 (1969).

must refrain from further action on those aspects of the case involved in the appeal until the appeal is completed. *See id.*

How far *Coinbase* extends is an active subject in the federal appellate courts. Because it is directly relevant to this appeal, we start by summarizing the case. Coinbase, a cryptocurrency platform operator, was sued by some of its users. *Id.* at 739. In reply, Coinbase sought to enforce a mandatory arbitration provision in its user agreement against the plaintiff users. *Id.* at 738. But the district court denied its motion. *Id.* Coinbase noted an interlocutory appeal of the district court's denial under the Federal Arbitration Act, 9 U.S.C. § 16(a), and it simultaneously moved in the district court to stay proceedings pending that appeal. *Coinbase*, 599 U.S. at 739. Despite the appeal, the district court denied Coinbase's motion, and the Ninth Circuit affirmed. *Id.*

The Supreme Court reversed. *Id.* at 747. Its conclusion flowed from an application of the "*Griggs* principle," which states that an appeal "divests the district court of its control over those aspects of the case involved in the appeal." *Id.* at 740 (quoting *Griggs*, 459 U.S. at 58). It then added three important clarifications to the *Griggs* principle that resolve this motion.

First, it explained that when the question on appeal *just is* "whether the litigation may go forward in the district court," then "the entire case is essentially 'involved in the appeal.'" *Id.* at 741 (quotations omitted). That's the question an arbitrability appeal presents. It asks whether the district court, rather than an arbitrator, had any power to be the factfinder in the case at all. Because that question was the whole ballgame, the district court was divested of control over more or less the whole case. Any other rule would

undercut the entire point of the appeal. *Id.* at 743 ("Absent an automatic stay of district court proceedings, Congress's decision . . . to afford a right to an interlocutory appeal [of arbitrability] would be largely nullified" because "many of the asserted benefits of arbitration . . . would be irretrievably lost.").[2]

Second, the Court explained that this "automatic stay" is, well, *automatic*. As the name implies, and as other contexts confirm, an automatic stay is self-executing. *See* 11 U.S.C. § 362 (automatic stay in bankruptcy); Fed. R. Civ. P. 62(a) (automatic 30-day stay after orders); *see also In re Gruntz*, 202 F.3d 1074, 1081 (9th Cir. 2000) (discussing the self-executing nature of bankruptcy automatic stays). A district court is therefore immediately required to halt all proceedings covered by the *Griggs* principle when a proper notice of appeal is docketed, whether or not the parties ask it to. Rather than determine whether a discretionary stay is appropriate under the usual four-factor standard, *see Nken v. Holder*, 556 U.S. 418, 434 (2009), "the background *Griggs* principle applies regardless." *Coinbase*, 599 U.S. at 747.

Last, the Court made clear that because *Griggs* identifies a background principle, it applies even without congressional action. "When Congress wants to authorize an interlocutory appeal and to automatically stay the district court proceedings during that

---

[2] Although *Coinbase* acknowledged that "the entire case is *essentially* involved in the appeal," it left open whether the district court could continue working on aspects of the case unrelated to the appeal. *Coinbase*, 599 U.S. at 741 (quotation marks removed and emphasis added) (quoting *Griggs*, 459 U.S. at 58). It observed that "Coinbase concedes that the district court may still proceed with matters that are not involved in the appeal, such as the awarding of costs and attorney's fees." *Id.* at 741 n.2. So even in situations (as here) where the appeal essentially encompasses the entire case, marginal aspects of the proceedings that are not implicated by the appeal might proceed. *See id*.

appeal, Congress need not say anything about a stay. At least absent contrary indications, the background *Griggs* principle already requires an automatic stay." *Id.* at 743–44. Congress can, of course, make an exception to this rule. *See, e.g.*, 38 U.S.C. § 7292(b)(1) ("Neither the application for, nor the granting of, an appeal under this paragraph shall stay proceedings in the Court of Appeals for Veterans Claims."). But while Congress can specify when it doesn't want an appeal to come with a stay, the default rule is that an appeal automatically stays all aspects of the case involved in the appeal. *See Coinbase*, 599 U.S. at 744, n.6 (listing statutes).

From these three clarifications, it should be clear that the *Griggs* principle applies just as forcefully here as it did in *Coinbase* itself. Just as it did for denials of motions to compel arbitration, Congress expressly authorized interlocutory appeals when a district court finds federal-officer removal under § 1442(a) inappropriate and orders remand to the state court. 28 U.S.C. § 1447(d). Nothing in § 1447(d) overrides the background *Griggs* principle. *Cf. BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230 (2021) ("[F]or suits against federal officers or agencies removed pursuant to 28 U.S.C. § 1442 . . . . Congress has deemed it appropriate to allow appellate review *before* a district court may remand a case to state court.") (emphasis added). And, just like a motion to compel arbitration, a remand order decides the foundational question: Which forum will hear the case?[3] Necessarily, then, in both situations, essentially the whole case is "involved in the

---

[3] Our holding here does not imply that the *Griggs* principle will sweep broadly in other interlocutory appeals. Interlocutory appeals taken from collateral orders, for example, will ordinarily come with narrow automatic stays because a collateral order must, (Continued)

7

appeal," and the lower court loses dominion over not just the remand order but most everything else in the case besides. *Coinbase*, 599 U.S. at 740. Doing otherwise would "largely defeat[] the point of the appeal." *Id.* at 743 (quotation omitted).

But the district court proceeded anyway because it misread *Coinbase*. It saw *Coinbase* as limited to orders compelling arbitration.[4] While *Coinbase* was a case about arbitration, this does not mean it was *only* a case about arbitration. *Coinbase* also was a case about a cryptocurrency platform. But its reasoning applies beyond cryptocurrency platforms. Distinctions require meaningful differences to matter; a decision's rationale binds us even if some immaterial facts differ. *See Payne v. Taslimi*, 998 F.3d 648, 655 (4th Cir. 2021) ("If necessary to the outcome, a precedent's reasoning must be followed."); *see also* Randy J. Kozel, *The Scope of Precedent*, 113 Mich. L. Rev. 179, 197 (2014). As Justice Gorsuch explained in *Ramos v. Louisiana*, "[i]t is usually a judicial decision's reasoning—its *ratio decidendi*—that allows it to have life and effect in the disposition of future cases." 590 U.S. 83, 104 (2020) (opinion of Gorsuch, J.); *see also Youngstown Sheet & Tube v. Sawyer*, 343 U.S. 579, 635 n.2 (1952) (Jackson, J., concurring) (separating *ratio*

---

by definition, be "completely separate from the merits of the action." *Flanagan v. United States*, 465 U.S. 259, 265 (1984) (quotation omitted). This means that little else other than the collateral order itself will be "involved in the appeal." *Coinbase*, 599 U.S. at 740.

[4] Other courts have reached the same conclusion, albeit without any analysis. *See Gov't of P.R. v. Express Scripts*, 119 F.4th 174, 184 n.3 (1st Cir. 2024); *Cnty. of Westchester v. Express Scripts, Inc.*, No. 24-1639, Dkt. 72 (2d Cir. Sept. 6, 2024) ("[T]he request to stay is denied because the Appellants are not entitled to an automatic stay pending appeal under *Coinbase*."); *Georgia v. Clark*, No. 23-13368, 2023 U.S. App. LEXIS 34018, at *2 (11th Cir. Dec. 21, 2023) ("*Coinbase* was limited to arbitration proceedings, which are not at issue here.").

8

*decidendi* from dictum); *Poindexter v. Greenhow*, 114 U.S. 270, 288 (1885) (summarizing the *ratio decidendi* in a series of cases).[5]

The rationale of *Coinbase* applies here. In relying on *Griggs*, *Coinbase* did not discriminate between arbitration and other appeals. Indeed, it went out of its way to approvingly recognize that qualified immunity and double jeopardy were "analogous contexts" where the courts of appeals have long imposed automatic stays upon appeal. *Coinbase*, 599 U.S. at 742 & n.2. Whatever part of a case is "involved in the appeal," big or small, it lies beyond the district court's reach because two courts "should not attempt to assert jurisdiction over a case simultaneously." *Griggs*, 459 U.S. at 58. So if the issue being appealed is *whether* the district court can send this case back, the district court cannot jump the gun before the appeal is resolved.

Martinsville seeks to escape *Coinbase* in another way. In its view, *Coinbase* and the *Griggs* principle only halts proceedings that would continue in a federal district court after the appeal. Oral Arg. at 22:00. Thus, Martinsville seems to suggest, the *Griggs* principle has no impact because there was nothing more for the district court to do after it signed the remand order. But even if Martinsville is correct about the scope of *Coinbase*— a question we need not decide—Martinsville is mistaken to think it changes the outcome

---

[5] Discerning holding from dicta is not always easy. Generally, however, a "[d]ictum is a 'statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding.'" *Payne*, 998 F.3d at 654 (quoting *Pittson Co. v. United States*, 199 F.3d 694, 703 (4th Cir. 1999)); *see* Pierre N. Leval, *Judging under the Constitution: Dicta about Dicta*, 81 N.Y.U. L. Rev. 1249, 1256 (2006). In other words, if language in an opinion is not required for the case's disposition, it is nonbinding dicta.

here. The district court did not fully transfer control over the case until it mailed a copy of the remand order to the state court. *See* § 1447(c). So at the time of the appeal, the district court still had an action it needed to take before it could shunt the case elsewhere—the statutorily required mailing of the order. That is a proceeding in the district court to which *Coinbase* applies. And that resolves this motion.

\* \* \*

Two courts at once is one court too many. *Coinbase* confirmed that *Griggs* was not a makeshift guideline with limited sweep but a general principle about the allocation of power among multiple courts with claims over the same case. The principle applies to appeals under the federal-officer-removal statute as it does elsewhere unless and until Congress tells us otherwise. So Express Scripts and OptumRx's appeal divested the district court of authority over the issues involved in that appeal, and the district court had no power to mail its order to state court.[6] On the pending appeal, we will address whether remand was proper. If we decide that it was—and only then—may the district court mail its remand order.[7]

*SO ORDERED.*

---

[6] For this reason, Express Scripts and OptumRx's motion is, strictly speaking, unnecessary. As explained, when *Coinbase* applies, a district court's proceedings are automatically stayed whether or not a motion for a stay pending appeal is granted.

[7] When a case is stayed pending appeal, the appellate court has a responsibility to promptly answer the question presented. This is especially true where the case involves another sovereign: here, the Commonwealth of Virginia. After expedited briefing and argument and a prompt order on this motion to stay, we will promptly turn to the merits.

WYNN, Circuit Judge, dissenting:

This action arises from the City of Martinsville suing Express Scripts for its alleged role in the opioid epidemic. Stripped of its amusing metaphors, the majority's factual description of the matter amounts to this:

1. Martinsville sued Express Scripts in state court.

2. Express Scripts removed the case to federal court.

3. But the federal court granted Martinsville's motion to remand the case to state court.

4. Express Scripts immediately gave notice of appeal.

5. But the federal court issued the remand order anyway.

6. Nevertheless, the majority finds that under the Supreme Court's decision in *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), the notice of appeal, which was filed "before the district court got to the post office," automatically stayed the district court's remand order.

7. In short, in the majority's view, *Coinbase* has essentially abrogated *Nken v. Holder*, 556 U.S. 418, 434 (2009), which recognized that a district court retains discretion regarding whether to grant a stay.

So, how does the majority opinion reach that result? It disingenuously extends the narrow holding on arbitrability appeals in *Coinbase* to broadly abrogate the well-settled holding in *Nken v. Holder* that district courts have discretion over whether to impose a stay. With respect, I would accept the Supreme Court's holding in *Coinbase* for what it is, a narrow exception for arbitrability appeals, and nothing more.

To be sure, district courts have "ha[d] broad discretion to stay proceedings as an incident to [their] power to control [their] own docket[s]," *Clinton v. Jones*, 520 U.S. 681, 706 (1997), for as long as there have been district courts. When the First Congress provided that the federal courts "shall have power to issue . . . all other writs . . . which may be necessary for the exercise of their respective jurisdictions," one of those writs was the writ of supersedeas, which stays proceedings during an appeal. Judiciary Act of 1789, ch. 20, § 14, 1 Stat. 73, 81–82. Because the decision to issue a writ of supersedeas depends on the circumstances of the case, it was considered a discretionary power of the federal courts. *Ex parte Milwaukee R.R. Co.*, 72 U.S. (5 Wall.) 188, 190 (1867) ("[T]he writ of *supersedeas* is eminently proper in a case where the circumstances justify it, as we think they do in the present instance.").

Congress reaffirmed this principle through the Judiciary Act of 1891, which permitted some interlocutory appeals but required that "the proceedings in other respects in the court below shall not be stayed unless otherwise ordered by that court during the pendency of such appeal." Act of Mar. 3, 1891, ch. 517, § 7, 26 Stat. 826, 828. Almost a century ago, the Supreme Court endorsed this principle when it observed that "[a] stay is not a matter of right" but "an exercise of judicial discretion" and that whether to issue one "depend[s] upon the circumstances of the particular case." *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672–73 (1926). The Supreme Court reaffirmed this view as recently as 2009. *Nken*, 556 U.S. at 427 (quoting *Virginian Ry. Co.*, 272 U.S. at 672).

Of course, this background principle is not absolute. As one past Justice put it, "[t]he power of the federal courts to issue stay orders to maintain the *status quo* pending

appeal . . . is subject to Congress' control." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 363 (1947) (Rutledge, J., dissenting); *see also Hor v. Gonzales*, 400 F.3d 482, 484 (7th Cir. 2005) ("Congress could limit our authority to issue stays[.]").

But the statute at issue in *Coinbase*—the Federal Arbitration Act—says nothing to suggest that Congress intended to displace the longstanding baseline principle described above.[1] To the contrary, the statutory text of the Federal Arbitration Act supports the opposite conclusion: the Act contains a provision requiring a stay during the pendency of arbitration. 9 U.S.C. § 3.

To be sure, as the majority in this matter writes, when the question on appeal is "whether the litigation may go forward in the district court, then the entire case is essentially involved in the appeal." Majority Op. at 5 (internal quotation marks omitted) (quoting *Coinbase*, 599 U.S. at 741). But, as Justice Kennedy put it in a different context, "[t]his much is obvious, if not tautological." *Groh v. Ramirez*, 540 U.S. 551, 569 (2004)

---

[1] The statute at issue in *Coinbase* states:

An appeal may be taken from— . . . an order—
    (A) refusing a stay of any action under section 3 of this title,
    (B) denying a petition under section 4 of this title to order arbitration to proceed,
    (C) denying an application under section 206 of this title to compel arbitration,
    (D) confirming or denying confirmation of an award or partial award, or
    (E) modifying, correcting, or vacating an award[.]

9 U.S.C. § 16(a)(1).

(Kennedy, J., dissenting). And besides, that proposition is not all that the Supreme Court said. *Coinbase* reasoned:

> Because the question on appeal is whether the case belongs in arbitration or instead in the district court, the entire case is essentially "involved in the appeal." As Judge Easterbrook cogently explained, when a party appeals the denial of a motion to compel arbitration, whether "the litigation may go forward in the district court is precisely what the court of appeals must decide."

599 U.S. at 741 (first quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam); and then quoting *Bradford-Scott Data Corp. v. Physician Comput. Network, Inc.*, 128 F.3d 504, 506 (7th Cir. 1997)). This passage only concerned a dispute between litigating in a district court or through alternative dispute resolution.

Additionally, the majority goes too far when it argues that the Supreme Court gave the *Griggs* principle the import and scope to apply to every interlocutory appeal of a dispositive issue. That's because *Griggs* did nothing of the sort. *Griggs*—a per curiam opinion decided decades before *Nken v. Holder* without briefing or argument on the merits—merely clarified that a change in the Federal Rules of Appellate Procedure means that a notice of appeal is to be considered premature and a nullity when filed before the disposition of post-judgment motions. 459 U.S. 59–60. To interpret the change otherwise, *Griggs* explains, could lead to situations where a district court and court of appeals simultaneously exercise jurisdiction to alter, amend, or vacate the same *judgment. Id.*; *see also, e.g.*, *Wis. Mut. Ins. Co. v. United States*, 441 F.3d 502, 504 (7th Cir. 2006) ("The rule summarized in *Griggs* is designed to prevent conflict among tribunals, as well as to prevent

14

the waste of time and money that occurs if the district court changes a judgment after an appeal has been briefed.").

The Supreme Court in *Coinbase* held that this rationale applies to arbitrability appeals because "continuation of proceedings in the district court 'largely defeats the point of the appeal.'" 599 U.S. at 743 (quoting *Bradford-Scott*, 128 F.3d at 505). In effect, continuing to litigate in the court system renders the party's statutory right to avoid doing so a nullity. *Coinbase* nowhere, as the majority claims, discarded two centuries of practice and established what is tantamount to a generally applicable substantive Canon in Favor of Automatic Stays.

In that vein, nothing in the statute at issue in this case requires that district courts be stripped of their discretion to determine whether to impose a stay. That's because "[s]tatutory texts are not just common law principles or aspirations to be shaped and applied as judges think reasonable. This tenet—adhere to the text—is neutral as a matter of politics and policy. The statutory text may be pro-business or pro-labor, pro-development or pro-environment, pro-bank or pro-consumer. Regardless, judges should follow clear text where it leads." Brett M. Kavanaugh, *Fixing Statutory Interpretation*, 129 Harv. L. Rev. 2118, 2135 (2016) (reviewing Robert A. Katzmann, *Judging Statutes* (2014)).

Ultimately, the question before this Court is: what limiting principle applies to *Coinbase*? In an effort to shape a generalizable rule, the majority elides *Coinbase*'s discussion on the particular burdens that the risk of continuing proceedings places on those appealing *arbitrability* and how those burdens undermine the *Federal Arbitration Act*. *See*

15

*Coinbase*, 599 U.S. at 741–43. The Supreme Court in *Coinbase* reasoned that if a district court continued "proceedings while the appeal on arbitrability was ongoing, then many of the asserted benefits of arbitration (efficiency, less expense, less intrusive discovery, and the like) would be irretrievably lost—even if the court of appeals later concluded that the case actually had belonged in arbitration all along." *Id.* at 743. And this waste would mean that the right to an interlocutory arbitrability appeal "would be largely nullified." *Id.*

The majority believes this discussion to be dicta. At least three Justices have suggested otherwise. *Id.* at 761 (Jackson, J., dissenting) ("[I]t might well be that the concerns motivating today's mandatory-general-stay rule do not extend beyond arbitration."). Other courts, including at least three circuits, have understood *Coinbase* as being limited to arbitration as well.[2] And for decades the Supreme Court has treated arbitration as exceptional. *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("We have described this provision [of the Federal Arbitration Act] as reflecting . . . a 'liberal federal policy favoring arbitration[.]'" (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983))).

---

[2] *See, e.g.*, *Gov't of P.R. v. Express Scripts, Inc.*, 119 F.4th 174, 184 n.3 (1st Cir. 2024); *County of Westchester v. Express Scripts, Inc.*, No. 24-1639 (2d Cir. Sept. 6, 2024), ECF No. 72; *Georgia v. Clark*, No. 23-13368, 2023 U.S. App. LEXIS 34018, at *2 (11th Cir. Dec. 21, 2023); *Wilhoite v. Hou*, No. 23-cv-02333, 2024 WL 2869986, at *3–4 (S.D. Cal. June 6, 2024), *appeal docketed sub nom. Wilhoite v. TuSimple Holdings, Inc.*, No. 24-3695 (9th Cir. June 13, 2024); *Westchester County v. Mylan Pharms., Inc.*, 737 F. Supp. 3d 214, 230 & n.13 (S.D.N.Y. 2024), *appeal docketed sub nom. Yates County v. Mylan Pharms., Inc.*, No. 24-1756 (2d Cir. July 1, 2024); *Att'y Gen. of N.J. v. Dow Chem. Co.*, No. 23-cv-2449 (RK) (JBD), 2024 WL 3361395, at *9–10 (D.N.J. July 9, 2024).

It is beyond question that the Supreme Court has the power to engage in policy choice. But that's not an invitation for this Court to do the same. Regardless, we must only read a Supreme Court decision to abrogate others when it does so with clarity, and we should otherwise "leav[e] to [the Supreme] Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)).

It is clear to me that the Supreme Court's decision in *Coinbase* does not constitute a general withdrawal of the discretion that courts have exercised for centuries—rather, it merely represents a carve-out in favor of arbitration. And this Court's practice has made clear that stays of a district court's federal-officer-remand decision are discretionary. *See, e.g.*, *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, No. 20-1031 (4th Cir. Feb. 21, 2020), ECF No. 22; *Mayor & City Council of Balt. v. BP P.L.C.*, No. 19-1644 (4th Cir. Oct. 1, 2019), ECF No. 116. Without clear direction from the Supreme Court, I see no reason to contravene the plain text of the statute and strip district courts of an inherent, discretionary power.

Thus, I must, with great respect for my esteemed colleagues, dissent.